Tilghman C. J.
(After stating the case proceeded as *532 follows:) — If the application of Brown described the land in controversy with reasonable certainty, and a survey was actually made for him, and improperly, returned for another, the cause was with the defendant, and on this ground he rested his defence. On the other hand, the plaintiff contended, that the application of Brown called for the land which was returned for George Frey, and that no survey of the land in question, was ever made for any other person than Joseph Wilson. Five bills of exceptions were taken by the plaintiff to evidence offered by the defendant.
1. The first exception was to the deposition of Daniel Turner, who swore that he was an assistant of Joseph Wallis, deputy surveyor of Mifflin county, and was directed by the said Joseph Wallis to make a survey for Gonsalus, according to the directions of the Board of Property, in which the lines of the said Gonsalus’ claim, under Benjamin Brown’s application* should be run, and also the lines of the survey returned for Joseph Wilson, and the whole laid down on a draft, showing the interferences of the two tracts, and that for this purpose-, Joseph Wallis gave to the deponent the copy or notes of Brown’s draft; that Gonsalus afterwards called on the deponent, who, at his request, ran the lines, and found them to agree with Brown’s draft; and that he blocked trees upon- the lines, and found them to answer exactly to the date of Brown’s survey; the deponent then marked the interferences on a draft for Gonsalus; and the deponent further said, that when Wallis gave him the draft, he told him that Gonsalus was living on the land. Annexed to this deposition was a draft, proved by James Harris (deputy surveyor) to be a copy of an official paper in his possession, but it does not appear by this paper for whom the draft was made, and Harris swore, that he never saw any official survey of the land in dispute, with Brozvn’s name on it. Turner swore that he verily.believed, the draft annexed to his deposition was a copy of Brown’s draft, delivered to him by Joseph Wallis, but he did not say what had become of that paper, nor was ■any account given either of that, or of the draft made by the deponent for Gonsalus. The matter contained in this deposition was very important; if believed by the jury, it went far towards the establishment of the defendant’s cause-. One part of it was clearlynot evidence — that part which mentions what Joseph Wallis told the deponent, of Gonsalus living on the *533 .land; it was hearsay evidence, and of some moment, as Qonsalus relied on the equity of his long possession. But this deposition is liable to a more important objection. It was incumbent on the defendant to show, that the draft annexed to the deposition, was the same from which Turner ran the lines; but this was no otherwise done than by Turner’s belief, and that after a period of many years. Was there not better evidence in the defendant’s possession ? There was, for he had received from Turner a draft, showing the very work which was done; this ought to have been produced, or proof made of its. loss or destruction. If there had remained of record, an official draft of a survey, appearing on its face to have been returned for Brown, and Turner had sworn that he received from Lukens the original, or a copy of that draft, and a certified copy had been annexed to the deposition, I should have thought it sufficient, because then, the annexed draft would have plainly appeared to be a copy of the same original, which had been delivered by Lukens to Turner. But the official draft having no name on it, left it in doubt for whom the survey was made, and that is the very gist of the dispute. In so doubtful a circumstance, it was highly reasonable, that before the paper should go to the jury, identified only by the belief of the witness, the defendant should at least show, that he had no better evidence in his power; and in this he failed. He had once in his power the draft made by Turner, which would have put the matter out of doubt: this draft, therefore, should have been produced, or the loss of it accounted for. I think too, that as the deposition speaks of Brown?s draft being delivered by Lukens to Turner, and the draft produced does not appear on its face to have been made for Brown, nor has it any date, it ought to have been shown that the identical draft delivered to Turner, was not still in his possession, or in the possession or power of the defendant. The requiring of this, was no hardship, as Turner could say what he had done with it. If satisfaction had been given on these points, the deposition, with the draft annexed, (except the hearsay of 'Joseph Wallis as to the defendant’s possession) would have been good evidence, being the best of which the nature of the case admitted.
2. The next exception was to the admission of the deposition of Samuel Wallis, certified under the hand and official *534 seal of the secretary of the land office. It is objected, 1st, that this was not such a paper as was intended by the act of 9^ April, 1781, declaring what certified copies shall be evidence. 2dly, That supposing the copy to be well certified, it was not evidence from its nature. The act of assembly speaks of u records, entries, and papers.’’’’ Now this certainly comprehends a deposition used iif a cause depending before the Board of Property. That Board is not a court of record strictly speaking, yet when the act mentions records, it is no great stretch to extend the meaning to all proceedings in causes depending before the Board. The secretary, receiver general, and surveyor general, have distinct offices, which constitute a whole, called the land office. The expressions of the law are, that “ copies of records, entries, and pa~ “ pers of the said office, duly attested by the said officers or “ their lawful deputies, under their hand and seal of office, “ shall be as good evidence as the original, by law, might or “ could be.” The three officers sit together in the Board of Property, and the secretary has the custody of the papers belonging, to the Board. ^ If depositions are not records, they are at least papers of a public nature, used before a court legally constituted for the decision of all caveats. As such, they are deposited in the office of the secretary, and ought not to be removed. They are therefore within the words, as well as the meaning of the law. Next , as to the matter of this deposition of Samuel Wallis. It was made ex parte and sworn before his brother, the before mentioned Joseph Wal~ lis, députy surveyor and justice of the peace. The proceedings before the Board of Property, not having been generally conducted with great regularity, it has been decided, that depositions used before them are not evidence, in trials at law, even between the same parties. If therefore the defendant had offered the deposition, as containing matter in support of his title, it would not have been evidence. But the case was very different. The matter of this deposition was directly against the defendant’s title, and was offered for' the pui'pose ©f taking from the weight of the decision of the Board of Property, by showing, that it was founded on an ex parte deposition of a person, who, although he had no direct interest, (having previously conveyed, without warranty all his interest in this land to James Packer) yet might be supposed to be inclined in favour of the person to whom he had *535 sold. For this purpose^ and for this .purpose only, it was good evidence. The decision of the Board of Property’ being evidence against the defendant, it was lawful for him to show, on what ground that decision was founded. This deposition goes directly to that point, because the dismissal of the caveat was founded on it, as is expressed in the body of the decision. The weight of this decision might be somewhat lessened, by the circumstance of the deposition being ex parte, and the jury might think it worthy of consideration that it was taken before Joseph Wallis, who, as it appears by the evidence of Daniel Turner, was desirous that the defendant’s claim, under Brown’s application, should be defeated. I am therefore of opinion, that it was properly admitted.
3. The third exception is to the admission of evidence offered by the defendant, to prove the declarations of George Frey, that he claimed the land in controversy. It appears to me, that this evidence was strictly proper. Brown had entered a caveat against Frey’s survey. This survey was returned-to the land office on a tract of land different from that in disputé. Unless that circumstance could be explained, there was an end of the defendant’s cause; for Brown by entering a caveat, for a different tract, showed, that in his own opinion, his application was intended for a different tract. Now it had been proved, that Charles Lukens first delivered the draft for the land in dispute to Frey, which, added to Frey’s persisting in his claim to this land, might possibly have deceived Brown as to the survey actually returned. Knowing that the draft was delivered to Frey, and that Frey claimed the land in dispute, he might have been led to suppose, without further inquiry, that Frey’s survey was returned for this land. The jury were to judge of the weight of the evidence, but it was a circumstance proper to be laid before them.
4. The plaintiff produced Jesse Packer, a witness, by whom he offered to prove, that Isaac and Abraham Vancamp had sold their right to this land to Alexander Martin, and that Martin had sold to James Packer, father of the lessor of the plaintiff; but the evidence was rejected by the court. It has been contended, that this evidence was improper, because it had not been shown that the Vancamps had any interest. If it were so, the objection would be good. It must be proved that a man had an interest, before it is permitted to be prov *536 ed that he made a conveyance; because otherwise the conveyance is not relevant. But how is the fact? The deed from Samuel Wallis to Packer had been read in evidence by the plaintiff, in which deed there is a recital, that Wallis had delivered possession to Vancamp according to a contract between them. This recital was evidence against Wallis, and against the plaintiff who claimed under him. The defendant might have made use of it to show an outstanding title in Vancamp, in bar of the plaintiff’s recovery; it was competent therefore to the plaintiff to rebut this argument, by showing that his father had purchased the right of the Vanca?nps from Martin, who had purchased from them. These conveyances, being executed by delivery of possession and payment of purchase money, would have been good without writing. I am therefore of opinion, that the evideqpe should have been received.
5. The last exception is to the rejection of the testimony of William Lamb, by whom the plaintiff offered to prove, that Benjamin Brown, after he had sold and conveyed to Gonsalus, acknowledged to Lamb, that he had not obtained a survey &n his application, because he had first claimed to have a survey on the land on which Thomas Poultney’s order was surveyed. Most clearly such acknowledgment was not evidence. If made while Brown had an interest, it would have been evidence against himself and all claiming under him, a# the confessions of the party concerned in the suit, or (which is the same) of the person under whom he claims. But after Brown had sold to the defendant, all privity between them was destroyed, and Brown stood in the same situation as any other stranger; consequently a court of justice would hear nothing from him without oath. It has been urged that these declarations might be received by way of confirming and corroborating what he had said before, and of corroborating the testimony of one of the plaintiff’s witnesses, who had been contradicted. But I feel no strength in this distinction. Where the credit of a witness is impeached by evidence, that he said something inconsistent with what he has sworn, at another time, this may be rebutted, by proof of other declanations by him, in conformity to what he has sworn; because, both being without oath, one is as good as the other, and the jury will judge of his credit on the whole. But with respect to Brown, his acknowledgment, without oath, could be ad- *537 matted on no other principle, than as the confessions of a party interested, under whom the defendant claimed, and therefore the principle was no longer applicable, at a time when the defendant no longer claimed under him.
On the whole of this case, my opinion is, that the judgment should be reversed, and a venire facias de novo awarded.
Yeates J.
The correctness of the court’s decisions during the trial, upon questions of evidence, depends, in a considerable degree, on the state of facts previously shown. There can be no doubt, that what Joseph Wallis told Daniel Turner of Richard Gonsalus's living on the land, was not legal evidence of that fact. It was competent to Turner to prove the courses he ran on the disputed premises in 1792; the marked trees he found there, and the ages of the blocks. He might also swear, that he pursued the lines of any particular draft, and found them distinctly marked, but he could not swear, that they exactly answered the date of Brown's -survey, when the original paper in the deputy surveyor’s office, shows néither date nor name. The identity of the draft in his hands, might have been ascertained by superior evidence to his belief. He swore, that he marked exactly the interferences in a draft for Gonsalus of the lands in question. Where is this draft? 'Not in the office of the deputy surveyor, as Mr. Harris swears. Gonsalus should have been examined on this point. If a draft of the interferences m.ade by Turner at the time, could be shown, it would obviate the objection, as to the identity of the paper. If Gonsalus could •swear, either that he never received the draft, or that it has been destroyed or lost, it would show, that due pains had been taken to supply ambiguities in the answers of Turner, who ought in the first instance, to have declared to whom he delivered the copy or notes of Brown's draft, as they are termed by him. As the case stands before us, I think the objections to part of the deposition of Turner shpuld have prevailed.
2. The connected surveys on Bald Eagle creek, together with the affirmation of Samuel Wallis underwritten, certified by a copy from the surveyor general’s office, under his seal of office, was proper evidence to account for the manner in which the defendant’s caveat was dismissed, and the patent *538 granted to the plaintiff. I consider it to be evidence only in this point of view. I do not consider Wallis as interested, when he made his affirmation'on the 11th April, 1789, ten years before he had conveyed to the plaintiff’s father, without any covenant as to the goodness of his title. His covenant of further assurance in his deed, did not oblige him to insert any covenant of general warranty in his new, conveyancé. He therefore could not be deemed a party, so as to entitle his affirmation to be read as the declarations of an interested man. It does not appear, that the defendant was present when his caveat was dismissed by the Board of Property, but they decided on the ex parte affidavit of -Samuel Wallis. The 3d section of the act of 9th April, 1781, directs, that “ the copies of records, entries, and papers of the land “ office duly attested, shall be as good evidence, as the ori- “ ginals by law might or could be.” If the original affidavit of Wallis could legally be received in this cause, so also could this copy under the positive terms of this section. The defendant might properly show, how he was prevented from proceeding on his caveat. I desire to be explicitly understood, as not giving an opinion, that the copies of depositions received by the Board of Property upon hearings on caveats, can be admitted in evidence. Such depositions have often been over-ruled, even where there has been a cross-examination. The law of 1781, effects no alteration in the substance, but only as to the form in which the evidence shall be received.
3. The declarations of George Frey, as to his claims under his application, were properly admitted to go to the jury, to account for the defendant’s entering a caveat against him. It lay with them to decide, whether a rational ground had •been assigned for the defendant’s predecessor, Brown’s proceeding to caveat a return on Frey’s application, on the 15th March, 1771, and the defendant’s caveating the plaintiff’s return, on the 6th May, 1788, after an interval of 17 years had elapsed. And it was highly material to ascertain, whether the first caveat was not founded on a mistake, superinduced by the improper conduct of Charles Lukens, who surveyed the lands.
4. I think, the declarations of Isaac and Abraham Fan-camp, ought also to have been allowed to go the jury, as offered on the jpart of the plaintiff to be proved by Jesse Packer, *539 and likewise, that he should have been permitted to establish the sale, by parol from Alexander Martin to James Packer, the father of the lessor of the plaintiff. The verbal contract between Samuel Wallis and the Vancamps, the sale of the latter after making improvements on these lands, to Martin, and the sale by Martin to James Packer, are severally recited in the indenture of 29th December, 1779, -from Wallis to Packer. It is readily admitted, that these recitals were not legal evidence against .the defendant, according to the cases in 3 Binn. 175 and 314. But they were evidence against the vendor, and all persons claiming under Samuel Wallis. The words of the indenture bound both parties. Independently of the facts offered to be proved by Jesse Packer, the defendant might avail himself of a defect in the plaintiff’s chain of title, and the plaintiff was bound to repel the objection, which would occur on the face of the conveyance made to James Packer, senior. A parol sale, and possession delivered in pursuance of it, with money paid to the vendor, will vest an equitable interest, and under certain circumstances, specific execution of such a contract will be decreed in equity. No reason can be assigned, why the plaintiff should be precluded from showing the truth of the case, in order to supply a defect, which would otherwise, bar his pretensions to the lands. The claim of Vancamps and Martin had been shown previously to the offer of the testimony of Jesse Packer.
5. The last exception respects the declarations of Benjamin Brown, made to William Lamb, after he had sold his right to the tract of land in question to the defendant, and made his deed, that he had not obtained a survey on his application, by reason of his first claiming to have it surveyed on the land which had been surveyed, on the elder order of Thomas Poultney. The effect of this evidence would be, that Brown, after having received his consideration of 50/., should retain that money, and yet frustrate by his testimony all the benefits to be derived under the conveyance he had made. This would be directly repugnant to every principle of common honesty, sound policy, and legal decision. No man shall be permitted to invalidate his own deed, is a settled legal maxim, founded on the immutable principles of justice.
The first and fourth bills of exceptions, I conceive have been weli supported, and the decisions thereon erroneous, as *540 to the legality of the evidence offered; but as to the other1 bills, they are not supported.
I am therefore of opinion, that the judgment below be reversed, and a venire facias de novo be awarded.
Brackenridge J. delivered an opinion, in which he agreed with the rest of the court, but as it has beén mislaid, the reporter is unable to publish it.
Judgment reversed, and a venire facias de novo awarded.