Baldwin, J.
It is unquestionable as a general rule, that the admission of one person cannot be given in evidence against another. There are various exceptions to the rule, of which I need notice here only such as arise out of a connexion of interest between the person making the admission and him against whom it is offered. In solving a question as to the admissibility of such evidence, regard must be had to the nature of the connecting interest, and the time of making the ad-' mission. The nature of the connecting interest may be that of a joint ownership or liability, or that of a derivation of title of one several owner from or through another. - In the former case, the ownership or liability must be strictly joint, as that of joint tenants or co-partners; and there the admission of one is treated as the admission of both : a mere community of interests, as that of tenants in common, is not sufficient. Dan &c. v. Brown, 4 Cowen 483. 493. But there is this difference between a joint and a derivative interest: in the former, the joint interest to be affected must be a subsisting one at the time of the admission; in the latter, the derivative interest to be affected must be acquired subsequently to the admission.
Whether the person making the admission, and the party against whom it is offered, be connected by a joint ownership or liability, or by the transmission of a several title from the former to the latter, the interest of the former must be a subsisting one at the time of the admission. If at the time of making it he has *680 parted from his interest, his admission is not legal evidence against him to whom it has passed. Upon this point the authorities are clear and numerous; and as respects the vendor of property, real or personal, or the assignor of a chose in action, there has been no case, so far as my information extends, allowing his declarations to be given in evidence against a party who had previously acquired his title. Indeed the propriety of rejecting such evidence would seem too obvious to require the support of authority. It would be manifestly of dangerous tendency to permit the vendor or assignor thus to defeat the right or title which he had conveyed or transferred to another; and unreasonable to deprive the latter of the protection to be derived from cross examination. Nor is this rule of exclusion varied by the circumstance that the vendor or assignor is bound by a warranty, express or implied, to assure the title or interest which he has conveyed or transferred. Such contingent liability does not furnish a sufficient security against indiscretion or fraud, to the prejudice of the derivative owner; there not being a complete identity of interest, and the former owner being divested, in a great measure, of the vigilance, circumspection and forethought incidental to the immediate ownership, enjoyment and control of the subject. It is from this consideration, doubtless, that we find the exclusion of admissions by a vendor or assignor, made after his sale or assignment, laid down in the books without exception or qualification ; and that the rule has been applied in various cases notwithstanding the contingent liability of the vendor or assignor. Wilcox v. Pearman, 9 Leigh 144. Packer v. Gonsalus, 1 Serg. & Rawle 536. Babb v. Clemson, 12 Serg. & Rawle 328.
What I have said has reference to admissions in pais, whether verbal or written ; or in a former suit, by answer or otherwise, to which the person against whom the evidence is offered was not a party. The same *681 principles must govern an admission in the answer of V f „ , . & ,. . . one defendant in a pending suit, ottered as evidence against his codefendant. Where there is a connexion of interest between the two defendants arising out of the relation of Vendor and vendee, or assignor and assignee, the admission in the answer must necessarily have been made after the vendor or assignor has parted from his interest. There is no consideration of justice or policy which requires the reception of such evidence. Accordingly, we find it laid down in the books, in the strongest terms, that the answer of one defendant is not evidence against his codefendant; and I am aware of no authority which makes the answer of a vendor or assignor an exception from the general rule. On the contrary, in Phœnix v. The Assignees of Ingraham, 5 Johns. R. 426. and other cases, such an admission is placed upon the same footing as an admission in pais; and in that case it was held that no declarations, in whatever form, of a parly to a sale or transfer, going to destroy and take away the vested rights of another, can ex post facto work that consequence, or be regarded as evidence against the vendee or assignee. No authority to the contrary has been produced by the appellant’s counsel, except a passage in Greenleaf’s Law of Evidence, p. 210. § 178. where it is said : “In general the answer of one defendant in chancery cannot be read in evidence against his co-defendant, the reason being, that as there is no issue between them, there can have been no opportunity for cross examination. But this rule does not apply to cases where the defendant claims through him whose answer is offered in evidence; nor to cases where they have a joint interest, either as partners or otherwise, in the transaction.” For the propositions in this last sentence, the learned author refers to Field &c. v. Holland &c. 6 Cranch 8. 24. and Clark's ex'ors v. Van Riemsdyk, 9 Cranch 153. 156. The latter case relates only to the *682 last proposition ; and Field &c. v. Holland &c. it will be found, does not sustain the first. The marginal note of the reporter is so, but it is wrong; no such doctrine is asserted in that case.
The case of Field &c. v. Holland &c. was briefly this : The plaintiffs Field Sfc. filed their bill in equity to set aside a sale of'a tract of land in Georgia, made by the sheriff under executions which issued upon judgments recovered by Holland against Cox; which tract of land, after the judgments, but before the levy of the executions, was sold by Cox to the plaintiffs. The equity in the bill was, that the judgments were discharged before the levy of the executions, by certain dealings and transactions between Holland and Cox; who, together with Milton and others, the purchasers at the sheriff’s sale, were made defendants: and the merits of the case turned upon the truth of that allegation, which the bill expressly required Holland to answer, and as to which it called upon him for a discovery. Holland answered denying the allegation ; and the question was as to the effect of his answer. The court, in its opinion delivered by chief justice Marshall, held that the answer of Holland responsive to the bill was evidence against the plaintiffs, and upon that and the other evidence in the cause dismissed the bill, not only as to Holland, but also as to Milton and others, the purchasers under the executions, who of course claimed under Holland.
The principle of this decision is not that the answer of a defendant is evidence for the plaintiff against a co-defendant, but that, when responsive to the bill, it is evidence against the plaintiff' for the responding defendant, and enures to the benefit of his codefendant claiming under him, when it destroys the foundation of the plaintiff’s claim. The language of the court is as follows : “ Neither is it to be admitted that the answer of Holland is not testimony against the plaintiffs. He is the party against whom the fact that the judgments *683 were discharged is to be established, and against whom it is to operate. This fact when established, it is true, affects the purchasers also; but it affects them consequentially, and through him. It affects them as representing him. Consequently, when the fact is established against or for him, it binds them. The plaintiffs themselves call upon Holland for a discovery. They aver that the judgments were discharged, and expressly require him to answer this allegation. They cannot now be allowed to say that this answer is no testimony.” It will be seen that the reasoning of the court is at first somewhat indefinite; I presume, for the purpose of avoiding the very inference which has been erroneously drawn from it. Its object was to shew, in the first place, that the fact of the payment or nonpayment of the judgments, when properly established, would not only be evidence for or against the plaintiff therein, but would operate for or against the purchasers under the authority thereof; at the same time avoiding the designation of the mode by which the fact, whether affirmative or negative, was to be established ; and then to shew that in the case before the court it was established negatively, by the responsive answer of the defendant Holland. There could be no propriety in intimating any opinion as to what would be the effect of a directly opposite state of facts, to wit, an admission by the defendant Holland, in his answer, of the allegation in the bill; and in fact no such opinion was intimated.
A plaintiff is put to no disadvantage by not being allowed to read the answer of one defendant against another, where they are not identified in interest. He is placed upon fair ground when permitted to encounter each with the appropriate pleadings and proofs. It is not his having associated them as parties that deprives him of the testimony of one against the other as a witness ; but because the one called on is incompetent or privileged by reason of his interest. If such be not the *684 fact, the plaintiff may examine him as a witness: and • • • if it be the fact, then his testimony can avail the plaintiff nothing, unless he has admitted in his answer the allegation sought to be proved. When he has so admitted it, he is no longer privileged, for he has already given evidence against himself; and where his codefendant is a mere claimant under him, an objection to his competency can come only from the plaintiff. No failure of justice, therefore, results from rejecting the answer of one defendant as evidence against his codefendant; and if received, it would be evidence in the most objectionable form. An admission in an answer is something more than evidence: it is a concessum in pleading, which requires no corroborating, and allows of no countervailing proofs. If received against a co-defendant, it ought to be with the same force and effect as against the respondent; otherwise it operates asa deposition, but a deposition of an anomalous character, one which denies the important privilege of cross examination. Either way, whether operating as a pleading or a deposition, it would place an assignee or vendee completely in the power of his assignor or vendor, and subject him to the danger of being made the help-u less victim of a fraudulent collusion.
There is nothing in the provisions or policy of the statute against gaming which can affect this question. That statute, it is true, gives a discovery against the party who has a knowledge of the material facts; but it does not make the discovery, when obtained, evidence against others, nor alter the rules of pleading and evidence‘" beyond its express enactments. It is enough that it avoids the security in the hands of an innocent assignee, when the fact is ascertained : it would be loo much to prevent him from putting the fact in issue, and requiring its proof, so far as it affects him, by legal testimony.
*685 It is clear, therefore, to my mind, that the answer of the defendant Jennings cannot be read against his assignee and codefendant Terrell, to prove that the bond of the plaintiff Pettit was executed for a gaming consideration. If the question were even doubtful upon principle, I would consider it as settled by authority.
In the case of Dade's adm'r v. Madison, 5 Leigh 401. Madison filed his bill against Dade and Tankersley, to be relieved against a judgment on an accepted order, drawn by Dade in favour of Tankersley, and accepted by Madison. The bill alleged that the order was drawn for money won by Dade from Madison at unlawful gaming; which allegation was admitted by Dade, but put in issue by Tankersley. And the court, after full consideration,.held that the answer of the defendant Dade was not evidence against his codefendant Tankersley, to prove the unlawful consideration of Madison's acceptance. The case cannot be distinguished in principle from the one before us. Madison's acceptance was a security for a debt due from him to Dade, which debt Dade by his order assigned to Tankersley. Dade by his answer admitted the unlawful consideration of the debt, and that admission was not permitted to affect his assignee and codefendant Tankersley. In the case of Hoomes v. Smock, 1 Wash. 389. this court bad previously held that the answer of the obligee in a bond, admitting the bond to have been executed for money won at unlawful gaming, was improper evidence against his assignee and codefendant. In accordance with these decisions is the case of Bartlett v. Marshall, 2 Bibb 470.
If, how-ever, it had been fully proved, by evidence unobjectionable on the part of the defendant Terrell, that the bond of the plaintiff was given for a gaming consideration, still it is clear that he would not be entitled to the relief which he seeks against that defendant. The evidence is entirely satisfactory to prove that neither Terrell nor his agent, previous to the assignment *686 of the bond, had any knowledge of its having been executed for money won at play; and that the agent was induced to purchase it by the plaintiff’s assurances that there was no objection to its payment, and that it would be duly paid. Under these circumstances, it is impossible that the plaintiff can be exonerated from bis indebtedness to the innocent assignee: and the only question he can be permitted to make is as to the amount of that indebtedness. Is it the whole sum for which he is bound, or is it the sum paid by the assignee to the assignor for the assignment?
At law, there could be no difficulty in this question. There the assignee would recover the whole amount evidenced by the obligation, or nothing. The obligor could not plead that he was not indebted the full amount of the bond, because the assignee had paid a less sum for it to the assignor; nor could he obtain a credit, upon the plea of payment or setoff, for the discount allowed by the assignor to the assignee. How is it in a court of equity ?
The plaintiff has not presented the question, either by his bill or his proofs. He has neither charged nor proved, that the consideration for the assignment was less than that for which he bound himself in the obligation. But suppose he had done both ; and suppose further that he had set forth the whole case in his bill, staling that the bond was given for money lost at unlawful gaming; that the assignee was ignorant of the fact, but had been induced by the wilful misrepresentations of him the plaintiff as to the true nature of the consideration, to lay out his money in the purchase of it at a certain discount; that he the plaintiff had conveyed property to a trustee to secure the payment of the debt; and praying an injunction to restrain proceedings for the recovery of more than the sum paid by the assignee to the assignor for the assignment: would such a case be proper for relief in equity? Or, *687 to make it stronger for the obligor, suppose (contrary to the fact) that he were defendant, instead of plaintiff, in the case before us; that the assignee had come in, upon some ground of equitable jurisdiction, to coerce payment of the debt; and that the obligor had defended himself by setting forth the whole case, as above suggested : would a court of conscience sustain such a defence ?
The principle upon which courts of equity act in such cases is not that of compensation in damages to the party deceived and injured, nor of restoring him by retribution to the condition in which he stood previously. They proceed upon the principle that the perpetrator of the fraud shall not be permitted to deny the truth of his own statement, but shall be compelled to make good that which he had represented to be so. Take the familiar example of the owner of an estate standing by and encouraging the purchase of it by another from a third person; the doctrine in regard to which is thus briefly and comprehensively slated by judge Story: “If a man having a title to an estate which is offered for sale, and knowing his title, stands by and encourages the sale, or does not forbid it, and thereby another person is induced to purchase the estate under the supposition that the title is good, the former so standing by and being silent will be bound by the sale, and neither he nor his privies will be at liberty to dispute the validity of the purchase.” 1 Story’s Eq. 376. § 385. The learned author adds, that “ courts of law now act upon the same enlightened principles in regard to personal property; in the transfer of which no technical formalities usually intervene to prevent the application of them. Thus, where it appeared that certain goods of the plaintiff were seized on an execution against a third person (in whose possession they were) and sold to the defendant, and the plaintiff made no objection to the sale though he had *688 full notice of it, it was held that the facts ought to be left to the jury to consider whether he had not assented to the sale and ceased to be the owner of the property. On this occasion lord Denman, in delivering the opinion of the court, said: ‘The rule of law' is clear, that where one by his words or conduct wilfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time.’ Pickard v. Sears, 6 Adolph. & Ellis 474.”
I can perceive no good reason why a gaming security should form an exception to the general rule on this subject; which rests upon principles of justice equally applicable, whether the debt be void in its inception, or be avoided by payment or release, or by any other matter ex post facto. It is true that a contract or security which is void, either by positive law or upon principles of public policy, is deemed incapable of confirmation ; but the doctrine we are considering is not based upon the idea of confirmation, which excludes the supposition of fraud, but upon the fact of fraud in the original representation or subsequent denial, which, to prevent iniquity, is made to operate as an estoppel. Admissions which have been acted upon by others are conclusive upon the party making them, in all cases between him and. the person whose conduct he has thus influenced ; and the party is estopped, on grounds of public policy and good faith, from repudiating his own representations. Greenleaf on Evid. 240. 241.
If this were not so, then the deluded assignee could recover nothing in an action upon the bond at common law', but would be driven to his action for the deceit; for he would be defeated by a plea of the unlawful consideration of the bond, unless he were permitted to reply the fraudulent conduct of the obligor. That *689 such a replication would be good, appears from the case of Davis's adm'r v. Thomas &c. 5 Leigh 1. That was an action of debt on a promissory note, brought for the benefit of the holder, in the name of the payee, against the maker, and was tried upon the plea of nil debet. The defendant offered proof that he had paid the contents of the note to the payee, before the transfer thereof to the holder; and to repel that defence, the holder offered proof that he was induced to take the transfer of the note for a valuable consideration, by the maker’s previous promise to make payment thereof to him. And this court held, that this evidence to repel the defence of payment was admissible, and that the maker’s promise to pay the debt to the holder estopped him from alleging payment to the payee before assignment. Judge Tucker in his opinion, in which the other judges concurred, placed the case expressly upon the same footing as if the security had been “ void in its inception, as for gaming, usury, and the like;” and shewed that the matter of estoppel might be replied to a plea in bar, or given in evidence upon the general issue.
The same principle, a fortiori, prevails in equity; for the estoppel, if it may be there so called, is not narrow and technical, but of a liberal and beneficial nature. It works exact justice between the obligor and the assignee, between whom the debt ought to be regarded as free from all objection. In that point of view, the assignee became entitled to the subject itself, and not to the return of the money he invested in it. He has a right, both legal and equitable, to any profit made from the investment, and the obligor has no shadow of equity against him in any degree whatever.
This view of the subject in no wise contravenes the spirit and policy of the statute against gaming, which was intended, so far as it avoids the security, to relieve a party guilty of an immoral act, and the public through him, from the injurious consequences of his own indis *690 cretion, but not to enable him to practise frauds upon others. And so far as regards the mere measure of recovery between the deluded assignee and the fraudulent obligor, though it may be a matter of some importance between them, it can have no influence, as it affects the public, in suppressing the vice of gambling.
The only case cited to prove that the innocent assignee, who has been deluded into the transaction by the misrepresentations of the obligor, is to be restricted in his recovery to the sum paid by him to the assignor, is that of Davison v. Franklin, 1 Barn. & Adolph. 142. 20 Eng. C. L. Rep. 363. There, judgment was confessed upon an obligation, under a warrant of attorney, and a motion subsequently made by the defendant to vacate it, on the ground that the obligation was for a gaming debt; which motion was resisted by the assignee, for whose benefit the judgment had been entered up in the name of the obligee, on the ground that he had been induced to take the assignment by the representations of the obligor ihat the debt was just and would be paid. And the court referred the case to a master to ascertain the facts, in order, if the allegations on both sides should turn out to be true, to a vacation of the judgment, on condition of payment by the obligor of the sum paid by the assignee to the assignor, with interest thereon. The judgment, it will be observed, was not in a regular action, but according to a practice which prevails in England of taking a warrant of attorney for confession of judgment as a security for money, and entering up the judgment without the necessity of an application to the court or the judge. Over such judgments the court exercises a controlling power, and will vacate them for fraud, or irregularity, or unlawfulness in the consideration, but upon such terms as its discretion may dictate. The decision, therefore, does not indicate what would have been the judgment of the court in a regular action, upon the proper plead *691 ings in the cause. But we know, upon common law ° r principles, that if the defendant had pleaded the unlawfulness of the consideration, and the plaintiff had replied by way of estoppel, or any matter of confession and avoidance, a judgment either way must have gone to the whole cause of action. Nor does the decision indicate what ought to be the decree of a court of equity under the circumstances of the case, but merely the mode in which the court of law thought proper to exercise its discretion in regard to such securities, of which the court is silently made the organ of the parties. At most, it is a single interlocutory decision of a court of common law, upon its own notion of equitable principles, which is only of persuasive authority here; and which, after a respectful consideration, seems to me to be without just foundation.
That case is moreover open to the observation, that in England bonds are not assignable, and must be sued in the name of the obligee; whereas with us the assignee may acquire the legal right, with the privilege of suing in his own name. But a more important consideration is, that, giving to the decision in that case the utmost weight due to the authority of a foreign tribunal, when directly upon a question before us, still it is contrary to the course of adjudication in Virginia. Buckner &c. v. Smith &c. 1 Wash. 296. Hoomes v. Smock, 1 Wash. 389. Davis's adm'r v. Thomas &c. 5 Leigh 1. The principle of these cases, as will be seen from an inspection of them, is to allow the deluded assignee to enforce payment against the fraudulent obligor for the whole amount of the gaming debt, whether the question arises in a court of law or in a court of equity. They cannot be shaken by the argument that the statute avoids the security in the hands of an innocent assignee for a valuable consideration without notice. So it does, where the case rests upon the original transaction, and the assignee, stepping into the shoes of the obligee, merely *692 succeeds to his rights : but so it does not, where the assignee is drawn into that relation by the misconduct of the obligor. If it did, then there would be no indebtedness to the amount of a single farthing, and the bond would be a mere blank both at law and in equity.
This distinction is recognized by the cases last cited, and by Kent, C. J. delivering the opinion of the court in Jackson v. Henry, 10 Johns. R. 204. 205. It is also adverted to in Woodson &c. v. Barrett & Co. 2 Hen. & Munf. 88. by Tucker, J. who significantly remarks, that where any instrument is absolutely void in its creation, it cannot be made valid by any subsequent transaction immediately arising out of it; that in the cases of Buckner &c. v. Smith &c. and Hoomes v. Smock, the court relied on particular circumstances in the conduct of the defendants respectively, which distinguished those cases from the general principle; and that there were no such circumstances in the case then before the court, the naked question being, whether the mere want of notice that a bond or other security was given for money won at gaming, entitled the assignee without notice to recover in an action brought upon the bond.
The statute 16 Car. 2. ch. 7. § 3. 7 Bac. Abr. Gaming. B. is quite as comprehensive as ours in preventing the recovery of gaming debts of a certain amount. It avoids not only all securities, including bonds, bills, judgments, mortgages &c. for money won at play, but all contracts. Not long after this statute the following case arose. A man wins £ 100 of another at play. The winner owed Sharp £ 100 w’ho demanded his debt. The winner brought him to the other of whom he won the money at play, who acknowledged the debt, and gave Sharp a bond for the £ 100; who, not being privy to the matter, or knowing that it was won at play, accepted the said bond, and for default of payment puts it in suit. The obligor pleads the statute of gaming; and upon a replication of the special matter, and demurrer thereto, *693 the plaintiff had judgment. Anon. 2 Mod. 279. So in Hussey v. Jacob, 1 Salk. 344. lord Holt said, “ If A. wins £ 100 of B., and, for a debt which A. owes C., he appoints B. to give C. a bond, it is good; C. is an innocent person; and it will be the same thing if A. be bound with him.” Stone v. Ware & Smith, 6 Munf. 541. is a like case upon the statute of usury. And in Stewart v. Eden, 2 Caines’s R. 150. it was held that a promissory note, given as collateral security for payment of an unsatisfied judgment on a note for a larger amount, tainted with usury, of which the plaintiffs were bona fide holders, could not be impeached on account of the usury.
My opinion therefore is, that the plaintiff has shewn no equity whatever against the defendant Terrell, and consequently that there is no error in the decree of the circuit court, in dissolving the plaintiff’s injunction and dismissing his bill as to that defendant. But I think the court erred in dismissing the bill as to the defendant Jennings.
The policy of the statute will be best subserved by treating the obligation, as between the obligor and obligee, as a mere nullity under all circumstances, and preventing the latter from deriving any benefit from it whatever, directly or indirectly. I need not go into the question whether, if the obligor makes a voluntary payment of the money, he can afterwards recover it back by an action at law or a bill in equitjq unless upon the terms and within the limitations prescribed by the statute. It is certain that, as between the original parties, a court of law will never enforce, and a court of equity will always relieve against, the unlawful security. 'When a failure of proof as to the assignee, or a supervening equity between him and the obligor, induces a court of equity to enforce the security in behalf of the assignee, or, what is in effect the same, to suffer it to be enforced ; then the court ought *694 to proceed, if the subject and the parties be properly before it, to administer the justice of the case as between the obligor and the obligee. The latter having, by his contract of assignment, appropriated to himself the avails of the security, and being enabled to retain them by the act of the court, which relieves him incidentally from all responsibility to his assignee, the result is, when the security shall have been enforced against the obligor, that the obligee has obtained from him, in substance though not in form, by means of a compulsory proceeding, satisfaction of a debt destitute of consideration and denounced by the law: but the subject and the parties are still before the court, and I am at a loss to perceive upon what principle the court can refuse redress to the obligor against the obligee.
In Dade's adm'r v. Madison, 5 Leigh 401. already in part stated, the plaintiff Madison having no proof, that could affect the defendant TarJcersley, of the unlawful consideration of the security, the injunction was dissolved, and Tanlcersley allowed to execute his judgment at law against Madison; but the court decreed, that upon Madison's paying the amount of the debt to Tanlcersley, the other defendant Dade should pay the same amount to Madison: and the decree was affirmed by this court. That case is an authority to prove, as a general proposition, that in an injunction suit by the obligor in a gaming security against the obligee and assignee, if the plaintiff fails to sustain his injunction against the assignee, whereby he is compelled to pay the money, he is entitled to a decree against the obligee; and that not merely for the sum paid by the assignee to the obligee for the assignment, but for the whole amount of the debt. And if there be any difficulty in the part of the case of which I am now speaking, it arises out of two considerations.
In the 6rst place, the evidence in the cause proves that the assignee was. induced to take the bond by the *695 obligor’s assurances that the debt was just and would be paid. Does this circumstance oppose any obstacle to giving relief to the obligor against the obligee ? I think not. The plaintiff’s consent to the assignment, coupled with his subsequent refusal to pay, was, under the circumstances, a wrong to the assignee, but none to the obligee. The assignment was the obligee’s own act, and promoted his own views; and how can he complain that it received the consent of the obligor? Between them, such consent can only be treated as the confirmation of a debt which by law is incapable of confirmation. If it were to have the effect of absolving the obligee from responsibility, he could always evade the statute before a rupture with the obligor (whose execution of the bond shews his willingness at first to pay), by prevailing upon him to consent to its assignment. It is the broad locus penitenticc given by law, in some respects, to the imprudent and necessitous, that affords them in a great measure the contemplated protection.
In the next place, it appears from the evidence that about 600 dollars of the money received by the defendant Jennings for the assignment has passed into the hands of the plaintiff. Hence it has been urged, that there was a combination between them to defraud the defendant Terrell, which ought to repel the plaintiff' from the equitable forum. But this is mere matter of suspicion; nor is it probable that the successful gambler would not only so surrender the greater part of his gains, but at the same time incur a liability to his assignee for the whole. It is not certainly ascertained whether the 600 dollars was received by the plaintiff from Jennings without accountability, or, as is more probable, to be accounted for as a loan. In either case, Jennings, in a decree against him for the plaintiff, ought to be credited with the money thus in the plaintiff’s own hands; and in the latter, should be com *696 pelled to surrender his claim and assurances for the loan. In both, Jennings ought to be debited with the whole amount which the plaintiff will be compelled to pay to Terrell, after such payment shall have been made (as in the case of Dade's adm'r v. Madison); unless in the further proceedings some better reason should appear to the contrary, than the plaintiff’s having been involved, to the extent disclosed by the record, in the affair of the assignment; such entanglements of the loser being usually attributable to a sense of shame, or a controlling influence of the winner. The loss to Pettit, and not merely the gain to Jennings, ought to be the measure of redress; because such would have been the preventive justice of the court, if Jennings had not been induced, from a regard to his own convenience, to make the assignment; and because the circulation of such instruments will be best restrained by throwing the consequent sacrifice or loss upon the obligee, instead of the obligor.
I think, therefore, that so much of the decree of the circuit court as dismisses the plaintiff’s bill as to the defendant Jennings ought to be reversed, and a reference made to a commissioner, to ascertain what amount of the money received by Jennings from Terrell came to the plaintiff’s hands, and what is the accountability, if any, of the plaintiff to Jennings therefor, and what the assurances held by the latter for the same; with leave to those parties, if requested by either, to amend their pleadings, in order that the court may be better enabled to render a final decree between them.
Allen, J.
The evidence in the record, so far as contained in the depositions of witnesses, does not prove that the bond was given on a gaming consideration. Unless therefore the answer of Jennings can be read as evidence against his codefendant, the bond in the hands *697 of the latter is unimpeached.. That it .cannot be so used, has been more than once decided by this court in cases arising under the statute against gaming. The question was directly presented and determined in Hoomes v. Smock, 1 Wash. 389. and Dade's adm’r v. Madison, 5 Leigh 401. In the first case, Beverley the assignor, who was made a defendant, stated in his answer that the bond was given in part for a gaming consideration ; and there was moreover proof of the fact by one witness. Judge Lyons, in delivering the opinion of the court, remarks upon this, that the answer was contradicted by one witness only, without circumstances to strengthen his testimony; for the answer of the other defendant, as it could not benefit his codefendant, could not injure him. It is somewhat remarkable that after this decision, judge Carr, in Skipwith v. Strother &c. 3 Rand. 214. should have considered the question as still open, and worthy of grave and careful consideration when it should be necessary to decide it. In Dade's adm'r v. Madison the proposition again arose. There the only evidence of the gaming consideration was contained in the answer of Dade. He occupied the precise position of the assignor here. Madison owed him money won at gaming: by his draft in favour of Tankersley, he directed the payment to Tankersley: and Madison accepted the draft. The form which the transaction assumed cannot vary the real nature of it. It was a transfer by Dade to Tankersley of his demand on Madison, which the latter by his acceptance bound himself to pay. Both the judges who gave opinions held that the answer could not be read against the codefendant.
The rule itself dates from the earliest history of chancery proceedings, is founded on the plainest principles of natural justice, and is liable to but few exceptions. In Mitchell v. Webb, Tothill 10. decided in the time of Elizabeth, it was declared that where the defendant by answer accuseth himself and fellow defendant, he is *698 believed against himself but not against his fellow. It is usually said, that the answer cannot be used against another defendant because he has had no opportunity for cross examination. For this reason, and because the disclosures in an answer are usually made upon searching and leading interrogatories, the answers to which would not be evidence in a deposition, it cannot be used.
This case does not fall within any exception which has been allowed to the general rule. There is no joint interest of the codefendants in the subject, and the admissions were made after the assignor had parted with his interest. Neither did this court, in the cases of Dade’s adm’r v. Madison and Hoomes v. Smock, consider that the gaming consideration of the note constituted any exception.
But it has been contended, with much ingenuity, that the necessity of the case should make this an exception: that here the defendant, being interested, could not be examined as a witness; and as the answer is excluded because there is no opportunity of cross examination, that where the party could never be examined as a witness, the principle on which the rule rests does not apply, and the reason ceasing, the rule should also cease.
If the principle is founded in natural justice, the converse of the proposition would seem to be more legitimate. If the right to crossexamine is so essential to the fair and equal administration of justice, then wherever it is shewn that such right cannot be exercised, the evidence should be deemed inadmissible.
This precise objection to the application of the rule excluding the answer of one defendant when offered as evidence against the other, was urged in the case of Morse v. Royal, 12 Ves. 355. It was argued there, as it has been here, that as the defendant whose answer the plaintiff desired to read was interested and could not be examined as a witness, his answer was neces *699 sary: and that a person appointing as his executor the , • , , , , ,, only witness to the case to be made against him, should not thereby deprive the plaintiff of all his evidence. But the chancellor did not consider that as sufficient to take the case out of the general rule.
There being no proof, therefore, as against Terrell, that the bond was on a gaming consideration, the transaction, as far as he is concerned, stands fair, and the injunction must be dissolved for the whole amount.
This view of the case, if correct, supersedes the necessity of enquiring what is the proper measure of relief in the case of a fair assignee, where the gaming consideration is established by proof. In Hoomes v. Smock and Dade's adm'r v. Madison the question did not arise, because the gaming consideration was not made out by proof as against the assignee. In Buckner &c. v. Smith &c. 1 Wash. 296. there was proof of the consideration ; but the point was not noticed. In each of the cases in 1 Wash, a decree over, upon the principle established in Dade's adm'r v. Madison, W'ould have been proper; but it was not asked for: and the court, in Dade's adm'r v. Madison, did not consider this circumstance as an authority against such a decree. The question therefore is still an open one in Virginia. Judge Tucker, in Dade's adm'r v. Madison, remarked, that as every thing stood fair so far as Tankersley was concerned, he was entilled to recover the whole amount of the draft, w’halever he might have paid for it. What would have been his opinion if the vice in the consideration had been proved by competent evidence as against Tankersley, does not appear. I do not understand the court, in any of the cases, as affirming the proposition that a security, declared by express law to be void to all intents and purposes whatever, can be held valid in equity to any intent. In both the cases from Washington’s Reports, the particular circumstances in the conduct of the defendants rendered them responsible. *700 There was, previous to the assignment, a promise to pay, upon the faith of which the assignee parted with his money. This new promise was the foundation of the recovery; and as, in the absence of proof to the contrary, the face of the bond gives the measure of the consideration paid, the court was bound to give the assignee the whole amount.
An instrument void, by express enactment, in its creation, cannot be made valid by any subsequent transaction arising out of it: Tucker, J. in Woodson &c. v. Barrett & Co. 2 Hen. & Munf. 88. And this constitutes the distinction between such an instrument and a voidable security, as of an infant, which may be confirmed ; or a security which, though in its origin neither void nor voidable, has been subsequently discharged. In such cases the subsequent confirmation or assurance given, upon the faith of which another has advanced his money, may be relied upon even at law, and in some cases as an estoppel in pais, to repel the defence, whether made by way of plea or adduced in evidence. Davis's adm'r v. Thomas &c. 5 Leigh 1. was a case of the latter description. The assignee of the promissory note had been induced to purchase by the maker’s promising to pay; and he was permitted to shew this, in order to repel the defence of payment to the payee before assignment. The maker, as against such an assignee, had waived his defence, and the instrument being valid, the assignee was entitled to recover the amount. But can this reasoning apply to the case of a security void in its origin ? The assignee stands in the position of the assignor: the instrument is equally void in the hands of both, and no subsequent agreement in relation to it can give it validity. In the case of an assignee for value without notice, but to whom no promise or assurance bad been made to induce him to purchase, even though a judgment had been confessed, the whole transaction would be avoided. *701 If this be so, how can it be pretended that a mere promise in pais should have a greater effect than a judgment? that in the one case an estoppel should be worked, so as in effect to repeal the statute, or at least utterly to defeat its policy, whilst in the other the solemn judgment of a court of record shall not preclude an enquiry into the truth ?
An anonymous case reported in 2 Mod. 279. and referred to in Buckner &c. v. Smith &c. 1 Wash. 300. would indeed seem to have decided that a promise to pay could be replied. There the winner owed a debt to a third person, and the loser executed to this third person his bond. To a plea of gaming, the plaintiff was permitted to reply that the debt was fairly due to him, and that he was not privy to the gaming. This case arose under the statute of 16 Car. 2. ch. 7. § 3. The statute of 9 Anne, ch. 14. though not so broad as ours, since it omits the word contracts, avoids all securities given for a gaming consideration. Under this statute it is settled that all securities given for money won at play are absolutely void, even in the hands of third persons, though they have paid a valuable consideration for them, and had no notice of their being won at play. Bowyer v. Bampton, 2 Strange 1155. Lowe v. Waller, Dougl. 736. Robinson v. Bland, 2 Burr. 1077. Woodson &c. v. Barrett & Co. 2 Hen. & Munf. 80. In principle what difference is there between those cases and the question under discussion? Is not the loser’s promise, under his hand and seal, to pay a fair debt to a third person who has no notice of the gaming, equivalent to his promise in pais made to the assignee? In the one case the third person discharges his immediate debtor in consideration of the bond, or pays his money for a negotiable security:, in the other, the assignee parts with his money upon the faith of the promise. In the first case the bond or negotiable instrument is to be held void: in the second it is treated as valid: for *702 that is the necessary effect of the doctrine that the defendant is estopped from shewing the truth.
It seems to me that at law the defence of gaming could not be met by a replication of a promise to pay. The court must declare the instrument void ; and the remedy of the party would be on the promise, in which the measure of damages would be the sum paid upon the faith of it. Where the case occurs in equity, it must be disposed of in conformity with the established rules of that forum. He who asks equity must do it. If another has been induced to part with his money by a false and fraudulent representation, it will reinstate him in the position he occupied before he purchased. This is done by the repayment of what he has advanced, with interest. I think, therefore, that the rule is correctly laid down in the case of Davison v. Franklin, 1 Barn. & Adolph. 142. 20 Eng. C. L. Rep. 363. Though the case was decided in a court of law', it was an application to set aside a judgment confessed under a warrant of attorney, and was addressed to the sound discretion of the court; a discretion to be exercised on equitable principles, so as best to effectuate the ends of justice. Governed by those principles, the court directed the bond and judgment to be given up on repayment of the sum really paid, with interest.
As to the liability of Jennings, the case of Dade's adm'r v. Madison is decisive, and Pettit should have had a decree over against him for the whole amount which he shall be compelled to pay, and shall actually pay, to Terrell in consequence of the assignment. Whether Pettit received a portion of the sum raised by the sale of his bond, or merely borrowed it and executed a new bond for the amount, is left uncertain by the testimony; and an enquiry should have been directed to ascertain how this matter stood.
*703 I think, therefore, as there is no evidence as against Terrell of the gaining consideration, that so much of the decree as dissolves the injunction should be affirmed, and that Terrell should have his costs, as the party substantially prevailing; that the decree should be reversed as to the residue; and that the cause should be remanded in order to a final decree as between Pettit and Jennings.