The People
v.
Vane.

## THE PEOPLE 'vs. VANE.

Evidence that a witness has on previous occasions given the same relation of facts, to which he testifies when examined on the trial of a cause, is admissible, where the witness is impeached either by adversary *testimony*, or upon *cross-examination*, or even upon *direct examination*, as where he admits that he was an *accomplice* in the crime of which he proves another to have been guilty.

Where the evidence against a party charged with a criminal offence is given by a suspected or impeached witness, an accomplice, by his own confession, and the accused offers no proof of *good character*, the omission to do so, is a strong presumption of guilt, which may properly be taken into consideration by the jury.

Should a jury, on the trial of a criminal case, happen to be misled by the remarks or views of the testimony presented by the presiding judge, *it seems* there is no remedy for the accused but by appeal to the pardoning power.

THE prisoner was indicted, tried and convicted at the New-York general sessions, for grand larceny, in stealing a packet of bank-bills. Sentence was suspended and the case brought before this court on a bill of exceptions. The principal witness against him was one *Wapshot*, an accomplice, who proved the larceny, and in doing so, disclosed his own participation in the crime. On his cross-examination, facts and circumstances in addition to his being an accomplice were elicited, calculated still further to impair his credibility. The admission of the prisoner that he was at the place where the money was stolen, and shared in the division of the plunder, was shown; but he denied that he was concerned in the taking of the money. The public prosecutor offered to prove that the witness (the accomplice) when first arrested had given the *same relation of the facts* in respect to the larceny which he had given on oath on the trial, which testimony was objected to by the prisoner, but received by the court, and the prisoner excepted. The prisoner produced several witnesses to prove an *alibi*, but gave no evidence of good character. He is 58 years old, and by his own admission had resided three years in the city of New-York previous to his arrest. The recorder, whilst delivering his charge to the jury, remarked, that in cases of doubt, evidence of good character was almost always an effectual shield

to the accused, but that no such evidence had been offered by the prisoner: that from the age he had attained it was evident that he must have acquired a character of some kind; that if it was good, it was in his power to have shewn it, and his omission to offer any evidence on that point, was a circumstance which they ought to consider as weighing strongly against him. To this part of the charge the prisioner also excepted.

*C. O'Conner*, for the prisoner.

*Ogden Hoffman*, (district attorney) for the people.

*By the Court*, SAVAGE, Ch. J. Neither of the exceptions taken by the prisoner's counsel seems to me to be well founded.

The right of either party to support and fortify the testimony of his witnesses, is essential to the preservation of the rights of individuals as well as the public. When a witness is sworn and testifies, his testimony, *prima facie*, is entitled to belief; if his character is attacked, it may be supported; if his testimony is shown by other witnesses to be false or doubtful, other witnesses may be introduced to sustain the testimony first given. If a witness be introduced by the defendant to show that the plaintiff's witness has given a different account of the transaction about which he has been testifying, another witness may be introduced to show that the first witness has on previous occasions given the same relation to which he has testified. It is not proper to introduce this kind of testimony in the first instance. Should a party offer to do so, it would show that he was conscious his own witness required support, and without it, was unworthy of belief. It is received only in reply and in answer to doubts attempted to be raised by the other party by impeaching the witness, either by testimony or by cross-examination: or it may be proper when the witness stands impeached, by the direct testimony given by himself, as in the present case. The witness shows on his direct examination that he was an accomplice; his testimony is therefore suspicious; it comes from a tainted source,

and may well be doubted. In such case, it seems to me the principle applies, that a witness who is impeached may be supported.

These positions are believed to be so near to elementary principles that few adjudications are to be found to sustain them. There are, however, some, and they receive the sanction of most writers on the law of evidence. *Hawkins* says, " what a witness hath been heard to say at another time may be given in evidence in order either to invalidate or confirm the testimony which he gives in court." Hawk. b. 2, ch. 46, § 14. The same principle was recognized in an action of trespass, in *Lutterell* v. *Reynell*, 1 Modern R. 282, 3. The witness had been a co-trespasser with the defendants, and it was declared that he was a competent witness, though it affected his credibility, he having been left out of the writ that he might be a witness; and several witnesses were allowed to prove that on previous occasions he had declared the same things to which he had then testified in court. It was said by the court, that though hearsay was not to be allowed as direct evidence, yet it might be used to prove that the witness had been constant to himself, whereby his testimony was corroborated. This case is cited by Mr. Justice *Buller*, in his Nisi Prius, p. 249, who adds: " But clearly it is not evidence in chief, and it seems doubtful whether it is so in reply or not." Mr. *Starkie*, in his Treatise on Evidence, follows this suggestion of Mr. Justice Buller, and adds : " That the witness having given a contrary account, although not upon oath, necessarily impeaches either his veracity or his memory; but his having asserted the same thing, does not in general carry his credibility farther than, nor so far as his oath." No one ever pretended that his declaration not under oath was equal to his testimony under oath ; nor is it in that point of view that confirmatory evidence was ever given. The question is, will the fact of his having often related the same story which he has now sworn to, tend to rebut the prejudice raised against him by his having given a contrary or different relation ? If it will, it is proper; the jury are to weigh it all. Mr. *Starkie* admits that there may be cases where such testimony would be proper, as where it rebutted

the idea that it was a recent fabrication, and when it was given before time was afforded for contrivance; but I apprehend the true question in all cases is, whether such confirmatory evidence can tend to the sustaining and supporting the testimony of the witness who has been impeached? If it can have that tendency, it is testimony of which the party may avail himself. How much weight it is entitled to, is for the consideration of the jury under the advice of the court.

The rule is laid down by Macnally, that what a witness hath been heard to say at another time, may be given in evidence, either to invalidate or confirm the testimony which he gives in court. 1 Macnally, 378. Several cases are referred to, in which this species of evidence was given, though it was objected to. It is said by the counsel for the prisoner that those cases should have no weight, because they were trials during the rebellion in Ireland, which should not be drawn into precedent. Whether improper convictions took place at the period in question, is not now the point of inquiry. If they did, it does not appear that they resulted from the application of the rule now contended for; nor does Macnally condemn the rule though he was counsel for some of the prisoners and made the objection. The rule itself was established long before the trials alluded to. It was recognized by Ch. J. *Tilghman,* 1 Serg. & Rawle, 536, who said, where the credit of a witness is impeached by evidence that he had said something at another time inconsistent with what he has sworn, this may be rebutted by proof of other declarations by him in conformity to what he has sworn; because, both being without oath, one is as good as the other, and the jury will judge of his credit on the whole. The same rule was also recognized by *Washington,* J., 1 Peters. C. C. R. 203, who says, declarations of a witness cannot be given in evidence, except in answer to evidence of other declarations of the witness inconsistent with what he had before sworn to. Now, surely, the only reason for giving evidence of contradictory declarations of a witness, is to discredit the witness and impeach his credibility; when evidence has been given to produce that effect it may be rebutted by evidence which destroys the effect of such testimony; and, as has been before remarked, it

can make no difference in principle whether the impeachment arises from evidence discrediting the witness, or from a cross-examination, or a direct examination. If the witness stands discredited, his credit may be supported. An unimpeached witness requires no support. The jury are to judge of the whole, and therefore there is no danger to be apprehended from such testimony. It is believed that such has been the practice of the criminal courts in this state, and from being so generally acquiesced in, no adjudication appears in our books.

The second point excepted to does not properly form the subject of an exception. The recorder was not stating the law to the jury, but commenting upon the testimony. That it is proper for the judge to sum up the evidence to the jury is not denied. Should his remarks lead the jury to an erroneous conclusion, the remedy is not by a bill of exceptions. In a civil case the remedy is familiar, but in a criminal case, I know of none except through the exercise of the pardoning power. In the present case, however, there can be no doubt of the correctness of the recorder's remarks. Evidence of the good character of a defendant on the trial of an indictment is always' admissible, though it cannot avail when the evidence against him is positive and unimpeached ; but when the evidence is circumstantial, or comes from a suspected or impeached witness, evidence of good character is very important. Had the witness, *Wapshot,* implicated some respectable citizen whose character was above reproach, can there be a doubt that good character alone would have been a perfect shield ? A man is not to be convicted of a crime because he has a bad character or no character ; but in cases like the present, character becomes important, and where no such evidence is produced, the presumption is, it cannot be produced. The further inference is that the defendant is a man of bad character, and would naturally be associated with such men as the witness. The probability of his guilt is therefore stronger than if a good character had been shown. And the testimony of the witness receives corroboration, from the absence of evidence which every man should be able to produce, to discredit such testimony.

New trial denied.