[ *50 ]          *ROBB and others *vs.* HACKLEY & WELTON.

Proof of declarations made by a witness out of court, in *corroboration* of testimony given by
   him on the trial of a cause, is as a general, and almost universal rule, *inadmissible.*

*It seems,* however, that to this rule there are exceptions, and that under special circumstances
   such proof will be received: as where the witness is charged with giving his testimony un-
   der the influence of some motive prompting him to make a false or coloured statement, it
   may be shown that he made similar declarations at a time when the imputed motive did not
   exist. So in contradiction of evidence tending to show that the account of the transaction,
   given by the witness, is a fabrication of *late date*, it may be shown that the same account
   was given by him before its ultimate effect and operation arising from a change of circum-
   stances could have been foreseen.

THIS was an application to set aside the report of a referee. The
plaintiffs were merchants in New-York, and the defendants merchants
in Hamilton, Madison county. The action was brought to recover the
amount of two bills of goods, amounting to about 800, which the plaintiffs
had sold the defendants in May and September, 1836, on a credit in each
case of four months. The defence was, that the plaintiffs had, on the 29th
of November, 1836, accepted the note of one *Townsend* for $500, payable
in 30 days, in full satisfaction and discharge of their debt. The defendants
were at the time in failing circumstances. *Isaac Small*, who resided at
Herkimer, acted as agent for the plaintiffs in making the compromise. He
testified that the note of Townsend was taken conditionally, and was only to
be in full satisfaction, if paid, and that he gave the defendants a receipt to
that effect. The note was protested, and had not been paid. *Townsend*,
who gave the note, was present at the settlement, and testified that the note
was received in full satisfaction and discharge of the plaintiff's debt against
the defendants, and he positively contradicted the statement of the agent,
Small. Another witness testified that Small told him, soon after the trans-
action, that he had taken the note of Townsend for $500, for the plaintiffs,
and that the defendants were absolutely discharged. Two other
[ *51 ]   witnesses *proved a conversation with one of the plaintiffs, the last
of February or the first of March, 1837, in which he mentioned
the compromise made with the defendants by Small, and said he had ac-
cepted Townsend's note in payment and satisfaction of the debt, and that
he was perfectly satisfied with the security.

The plaintiffs then offered to read in evidence a letter, *without date*, pur-
porting to have been written by the agent, Small, and addressed to the plain-
tiffs at New York. It was post-marked, " Herkimer, N. Y. Dec. 1."—and
also offered to prove by Small that he had written and sent the letter to the
plaintiffs, immediately after his return from Hamilton, where the compromise
was made. This letter gave the same account of the transaction that Small

had given in his testimony. A witness proved that the post-mark on the letter, judging from his knowledge of the post-mark at the Herkimer office, was genuine, and that he received the letter by private conveyance, about one or two weeks before the trial in September, 1838, in a sealed blank envelope, which also contained a brief on behalf of the plaintiffs, made up by their attorney. To receiving the letter in evidence, the defendants objected, on the ground, that the declarations of the witness were not admissible to corroborate or strengthen his testimony; and that if the same were admissible when the declarations were proved by the testimony of other witnesses, yet they were not competent to be proved by the witness whose testimony was sought to be corroborated. The defendants also objected to the offered testimony of Small in relation to the letter. Both objections were overruled. Small then testified that the letter was by him written and sent by mail to the plaintiffs, immediately after his return from Hamilton. The letter was thereupon read in evidence.

The referee reported in favor of the plaintiffs $898,81. The defendants now move to set aside the report.

C. P. Kirkland, for defendants.

J. A. Spencer, for plaintiffs.

*By the Court, BRONSON, J. The witness, Isaac Small, was [ *52 ] contradicted in the most material point of his testimony, and it was also proved that he had given a different relation of the matter out of court from that which he gave on the hearing. The letter which he had written to plaintiffs, was not used for the purpose of refreshing his recollection of the transaction to which it related, but it was admitted in evidence for the purpose of confirming his testimony, by showing that he had given the same account of the matter out of court, and when not under oath that he gave on the trial. Independent of his own statement, there was no evidence that the letter was written when the transaction was recent, or that it had ever been in the hands of the plaintiffs. It may have been prepared with direct reference to this litigation. The case is not so strong as it would have been on proof by a third person that the witness had made similar declarations immediately after the business was transacted.

When a witness is contradicted, his testimony may, of course, be fortified by proving the same facts by others; if his character for truth is attacked, it may be supported by proving it good; and if evidence is given that the witness has made declarations out of court inconsistent with his testimony, it may be shewn that those declarations were made under such circumstances as not to detract from his credibility. If an attempt is made to discredit the witness, on the ground that his testimony is given under the influence of some motive prompting him to make a false or colored statement, the party calling

him has been allowed to show, in reply, that the witness made similar declarations at a time when the imputed motive did not exist.

But as a general, and almost universal rule, evidence of what the witness has said out of court, cannot be received to fortify his testimony. It violates a first principle in the law of evidence to allow a party to be affected, either in his person or his property, by the declarations of a witness made without oath. And besides, it can be no confirmation of what the witness has said on oath, to show that he has made similar declarations when under no [ *53 ] such solemn *obligation to speak the truth. It is no answer to say, that such evidence will not be likely to gain credit, and consequently will do no harm. Evidence should never be given to a jury which they are not at liberty to believe.

The referee was probably governed, in receiving the evidence, by the language of the late learned chief justice in *The People* v. *Vane*, 12 *Wendell*, 78; but that case does not necessarily go beyond deciding, that the testimony of an *accomplice* in crime may be corroborated, by showing that *when first arrested* he gave the same relation of the facts which he had given on oath upon the trial. The fact that the accomplice was called as a witness for the people, gave rise to the inference that he was criminating the defendant for the purpose of exempting himself from prosecution for the larceny. It might, therefore, be proper to show that he had given the same account of the matter *at a time when there was no such motive* for making a false accusation. If, when first arrested, *and when he had no expectation of personal exemption*, he had frankly disclosed the whole matter, that might tend to confirm his subsequent repetition of the same statement on oath. This brings the case within an acknowledged exception to the general rule, that the testimony of a contradicted, impeached or discredited witness cannot be confirmed by proving that he has made similar declarations out of court.

Mr. Phillipps, after stating the general rule, says, in one point of view, a former statement by the witness appears to be admissible in confirmation of his evidence; and that is, where the counsel on the other side impute a design to misrepresent, *from some motive of interest or relationship;* there, indeed, *in order to repel such an imputation*, it might be proper to show, that the witness made a similar statement *at a time when the supposed motive did not exist*, or when motives of interest would have prompted him to make a different statement of the facts. 1 *Phil. Ev.* 207, 8, *Cowen's ed.* It is agreed also by Mr. Starkie, that such evidence may, *under special circumstances*, be admitted; as, for instance, in contradiction of evidence tending to show that the account was a fabrication of *late date*, and where [ *54 ] *consequently it becomes material to show that the same account has been given *before its ultimate effect and operation, arising from a change of circumstances, could have been foreseen.* 1 *Stark. Ev.*

149. And see 2 *Russ. on. Cr.* 982, for exceptions to the general rule, that hearsay evidence is not admissible. Mr. Evans, in his valuable notes to Pothier, after speaking of the admission of declarations of the witness on former occasions to conform his statements in court, says, in ordinary cases the evidence would be at least superfluous, for the assertions of a witness are to be regarded in general as true, until there is some *particular reason* for impeaching them as false ; which reason may be repelled by circumstances shewing that *the motive* upon which it is supposed to have been founded, *could not have had existence at the time when the previous relation was made,* and which therefore repel the supposition of the fact related being an *after-thought* or fabrication. He adds, if a witness speaks to facts negativing the existence of a contract, and insinuations are thrown out, that he has *a near connection with the party* on whose behalf he appears—that *a change of market,* or any other *alteration of circumstances,* has excited an inducement to recede from a deliberate engagement ; the proof by unsuspicious testimony that a similar account was given *when the contract alleged had every prospect of advantage,* removes the imputation resulting from the opposite circumstance, and the testimony is placed upon the same level which it would have had, if *the motives* for receding from a previous intention had never had existence. 2 *Poth. Ob.* 251, 2, *Evan's ed.* 1826.

There are undoubtedly some very respectable authorities in favour of receiving this kind of confirmatory evidence in all cases where the credibility of the witness is impeached, whatever may be the nature of the evidence tending to his discredit. In *Lutterell v. Reynell,* 1 *Mod.* 282, the action was trespass for taking money, but the taking was in truth a felony. William Maynard, an accomplice, was a witness for the plaintiff, and several witnesses were received and allowed, to prove that he did at divers times discourse and declare the same things, and to the like purpose, that he *testified on the trial : and the Ch. Baron said, " though [ *55 ] a hearsay was not to be allowed as a direct evidence, yet it might be used to this purpose, viz. to prove that William Maynard was consistent to himself, whereby his testimony was corroborated." No special circumstances, beyond the fact that the witness was an accomplice, are stated as the ground for admitting his declarations out of court. *Hawkins* says, that what a witness hath been heard to say at another time, may be given in evidence in order either to invalidate or confirm the testimony which he gives in court—citing the case in Modern. *Hawk. P. C. b.* 2, *c.* 46, *s.* 48. To the same effect is 1 *Gilb. Ev.* 890, *Lofft's ed.* 1795. And this rule was followed on the trials for high treason in Ireland, in the years 1795 to 1798. 1 *MacNally Ev.* 259. There are also one or two cases in the State Trials laying down the same rule.

But this most dangerous doctrine was long since utterly exploded in Eng-

land, although the case in which it was first formerly overruled has been but recently published. The case to which I allude is *The King* v. *Parker*, 13 *Doug.* 242, where the witness was an accomplice in the robbery. *Buller*, J. said, " it was now settled, that what a witness said not upon oath, would not be admitted to confirm what he said upon oath ; and that the case of *Lutterell* v. *Reynell*, and the passage cited from *Hawkins*, was not now law ;" and such was the judgment of the whole court of K. B. upon solemn argument. This decision was in accordance with a doubt which Mr. Justice Buller had previously expressed in relation to the authority of the case in *Modern. Bull N. P.* 294. Since the decision in *The King* v. *Parker*, I find no authority or dictum in the English books in favour of receiving this kind of confirmatory evidence, except under some such special circumstances as have already been mentioned.

Mr. *Starkie* says, it seems the better opinion that a witness cannot be confirmed by proof that he has given the same account before, even although it has been proved that he has given a different account, in order to impeach his veracity ; for his mere declaration of the fact is not *evidence. [ *56 ] His having given a contrary account, although not upon oath, necessarily impeaches his veracit or his memory ; but his having asserted the same thing, does not in general carry his credibility further than, nor so far, as his oath. 1 *Stark. Ev.* 148. Mr. Russell does not notice this among the several exceptions which he specifies to the general rule that hearsay evidence is inadmissible. 2 *Russ. Cr.* 682, 690, *ed. of* 1836. Mr. Phillips, after citing the cases where this kind of confirmatory evidence was received, says, it would not now be allowed. 1 *Phill. Ev.* 107, *Cowen's ed.*

In the *Berkley peerage case*, before the House of Lords in 1811, Lord *Redesdale*, after the question had been much discussed by counsel on both sides, said, he had always understood, that for the purpose of impugning the testimony of a witness, his declarations at another time might be inquired into, but not for the purpose of confirming his evidence. And the lord chancellor (Eldon) expressed his decided opinion that this was the true rule. 1 *Phil. Ev.* 307, *note*, and 1 *Stark. Ev.* 149, *note* (*n*). The remarks of Mr. Phillips, at the same page, upon this species of evidence, are so pertinent and just, that I cannot forbear quoting them. " It may be observed," he says, " upon this kind of evidence in general, that a representation without oath, can scarcely be considered as any confirmation of a statement upon oath. It is the oath that confirms : and the bare assertion that requires confirmation. The probability is, that in almost every case, the witness who swears to certain facts at the trial, has been heard to assert the same facts before the trial ; and it is not so much in support of his character that he has given the same account, as it would be to his discredit that

he should ever have made one different. The imputation on his veracity results from the fact of his having contradicted himself, and this is not in the least controverted or explained by the evidence in question. If a witness has made a statement a hundred times in one way, and a hundred times in another way directly contrary, the only inference must be, that he is utterly destitute of all title to credit."

Some of the American courts have admitted this kind of *evi-   [ *57 ] dence. A collection of the cases, accompanied by very judicious remarks, will be found in the 'learned notes to 1 *Phillips* by Messrs. *Cowen & Hill*, *p.* 776-9. These decisions are based upon English authorities which are no longer respected in Westminster Hall, and I have failed to discover in them any thing calculated to shake my decided conviction that this kind of confirmatory evidence is of dangerous tendency, and ought not to be received, except under some such special circumstances, as have already been noticed. We have not in this state departed from that ancient and safe landmark in the law of evidence, which requires a witness in all cases to speak under the solemn sanction of an oath, and I am unwilling to peril the lives, the fame, or the property of individuals, by adopting the contrary doctrine.

Motion granted.