# SULLIVAN,

## DECEMBER TERM, A. D. 1860.

### REED *v.* SPAULDING.

Gifts *inter vivos*, like those *causa mortis*, must be perfected by actual delivery.

But gifts *inter vivos*, when perfected by actual delivery and acceptance, unlike those *causa mortis*, go into immediate and absolute effect.

When a suit is brought by an administrator for the benefit of a residuary legatee, and a third person gives a bond to the administrator to indemnify him against the costs of the suit, such third person is in no sense a party to the suit, and is a competent witness.

But when the court had erroneously ruled that the plaintiff's witness could not testify unless the plaintiff (the administrator) should elect to do so, and the plaintiff excepts to that ruling and thereupon elects to testify himself and does so testify, he removes the ground of the exception he had taken.

Upon the question of the genuineness of the testator's signature to a paper offered in evidence by the defendant, it appeared that on one occasion a witness had seen the defendant copy the testator's name from a genuine signature, and it was held incompetent to inquire of the witness as to the correctness of that imitation, where the copy has not been preserved, with the view of showing that the defendant might have written the signature in question ; especially as the witness was not an expert.

Where a witness had been impeached by showing that he had made statements to several persons contradictory to those made on the stand, it is not competent to introduce the statements of the witness made to other persons, similar to those made upon the stand, for the purpose of sustaining him, even where such statements were made immediately after the transaction occurred which had been stated on the stand, unless it shall distinctly appear that there has been some change in the relation of the witness to the party or cause, since such early statements were made.

THIS was an action brought by the plaintiff as administrator of Enos Rickard, deceased, against the defendant, for certain notes of hand, payable to said deceased, and for a horse, cow, and some other articles, alleged to have been the property of the deceased.

The defendant claimed the property upon the ground that the notes and other articles were given and delivered to him by the deceased during his life-time.

Asa T. Barron was offered as a witness by the plaintiff; it appeared that he had given an indemnifying bond, by which he was held to the administrator to pay the costs of the action. The administrator declined to prosecute the suit for the benefit and at the expense of the estate, but allowed the action to be brought for the benefit of a residuary legatee, in his name, upon being indemnified against the costs. Objection was made to the admission of Barron, on the ground that he was a party in interest, unless the administrator elected to testify; and the court sustained the objection; and the plaintiff excepted. The administrator elected to testify; and the witness was then admitted and gave his evidence.

The defendant produced and offered in evidence a bill of sale, purporting to have been executed by the deceased to him in this form:

"Plainfield, October 26, 1857. E. R. Spaulding: Bought of Enos Rickard; One note, &c.," describing the notes in question, by the names of the makers, their dates and amounts, and concluding; "Received payment for the above notes.

ENOS RICKARD."

Evidence was introduced, tending to prove the signature genuine, and the defendant testified that the bill of sale was made without consideration, and was intended as evidence of a gift. The court, against the plaintiff's objection, permitted it to go to the jury as evidence

of a gift from the testator to the defendant, of the notes described in it, and the plaintiff excepted.

The defendant offered in evidence a writing, purporting to be signed by the deceased, in the following form :

"Plainfield, October 26, 1857. This certifies that I this day deliver to Enos R. Spaulding a certain amount of notes, to which I received payment to my satisfaction in full.

ENOS RICKARD."

Evidence was introduced tending to prove the signature, and the court, against the plaintiff's objection, permitted the same to go to the jury, as evidence tending to prove an actual delivery to the defendant of the notes described in the bill of sale of the same date, and which the defendant testified were made at the same time. The plaintiff excepted.

Upon the trial there was a question as to the genuineness of the signatures of the deceased, upon said bill of sale and receipt. For the purpose of showing that they might have been made by the defendant, a witness was offered, who testified that the defendant, speaking of these writings, which he said they accused him of forging, said he would give him ten dollars, or any other man, to write old Enos' name, so as it could not be detected. He said the witness might have one to look at. He took it, and tried it, but the defendant said it would not answer. The defendant then tried, and wrote Enos' name and his own. He wrote them on marble, in the witness' gravestone shop, and the witness believed them to have been rubbed out. The witness appeared to have no particular skill in relation to writing. It was proposed by the plaintiff to ask him as to the correctness of the imitation ; the defendant objected, and the court held the question inadmissible, and the plaintiff excepted.

The defendant testified that the notes were delivered to

him at the date of the bill of sale. The plaintiff offered evidence tending to show that the defendant had said that the notes were not so delivered. Evidence, offered by the defendant, that at a previous time, and soon after the date of the bill of sale, he had said that the notes were so delivered to him was admitted, and the plaintiff excepted.

The court admitted the evidence of Arvin S. Bartholomew, to prove that the defendant notified him, as selectman of Plainfield, that the notes against said town, which were part of those in controversy, had been delivered to him before the testator's death, although the witness could not swear positively, but only to his impression, that he was so notified before the testator's death, and the plaintiff excepted.

The jury found a verdict for the defendant, and the plaintiff moved that the same may be set aside by reason of said exceptions, and the questions were reserved and transferred to the law term.

*Cushing & Chapin, Lund* and *Buckingham*, for the plaintiff, cited *Ellicott* v. *Pearle*, 1 McLean 206 ; *Smith* v. *Stickney*, 17 Barb. 498 ; *Ware* v. *Ware*, 8 Greenl. 55.

*Burke & Waite, Freeman & McClure*, and *Flanders*, for the defendant.

1. The case finds Asa T. Barron to be the real party in interest. The word "party," as used in the Pamphlet Laws (ch. 2090), must be explained by chapter 1952, of which it is an amendment, the second section of which includes, under that term, both nominal and real parties. The administrator is only the nominal party ; the persons interested in the estate are the real parties, and are all excluded as witnesses until he elects to testify. 1 Greenl. Ev., sec. 437 ; *Appleton* v. *Boyd*, 7 Mass. 131 ; *Sawyer* v. *Tappan*, 14 N. H. 352. If the court erred in excluding Bar-

ron, the plaintiff, by electing to testify, and then examining Barron as a witness, waived the objection. *Foye* v. *Leighton*, 24 N. H. 29; *Oakes* v. *Thornton*, 28 N. H. 44; *Bowman* v. *Sanborn*, 25 N. H. 87.

2. To prove a gift of the notes, the defendant was obliged to offer evidence that the testator delivered the notes to him voluntarily, and with the intention of passing the title to the same. The bill of sale was admissible to prove these facts. The consideration, the conditions, and the object of the transfer, were immaterial. *Hersom* v. *Henderson*, 21 N. H. 220; *Webster* v. *Hodgkins*, 25 N. H. 128; 1 Greenl. Ev. sec. 305.

3. The receipt contains an admission of the testator that the notes were delivered to the defendant at the time of its execution. *Burnham* v. *Ayer*, 35 N. H. 351. Both the bill of sale and receipt are *primâ facie* evidence of a sale and delivery of the notes, and are competent testimony for that purpose, and the testator could not defeat the gift by proof that it was without consideration.

4. The witness did not appear to be competent to give an opinion on a comparison of writings. He was not asked, and the plaintiff did not propose to ask him, if, from the knowledge he had of the defendant's handwriting, he could give an opinion whether or not the signatures in dispute were made by the defendant. The evidence offered was immaterial, and experts would not be permitted to give opinions upon writings not in the case. *Wiggin* v. *Plumer*, 31 N. H. 251; *Spear* v. *Richardson*, 34 N. H. 428.

5. Under the circumstances of the case the defendant had a right to show that soon after the execution of the bill of sale he had told that the notes had been delivered to him by the testator. *French* v. *Merrill*, 6 N. H. 465; 1 Phill. Ev. 231; 1 Stark. Ev. 187.

6. The evidence of Bartholomew was admissible. The fact that he could not state positively that he received

notice before the testator's death, did not render it inadmissible. It was to be weighed by the jury.

SARGENT, J. Gifts *inter vivos* have no reference to the future, but go into immediate and absolute effect. In this respect they differ from gifts *causa mortis*. But in both cases alike, delivery is essential, both at law and in equity, to the validity of a parol gift of a chattel. Without actual delivery the title does not pass. Where the gift *inter vivos* is perfected by delivery and acceptance, it is then irrevocable, unless it be prejudicial to creditors, or the donor was under some legal incapacity, or was circumvented by fraud. 2 Kent's Com. 440.

In the case before us, the defendant claimed the property under an alleged gift from Rickard to himself, perfected by an actual delivery of the property and acceptance of the same. The plaintiff does not place his claim upon the ground that he is a creditor of Rickard, or that Rickard was under any legal incapacity, or was circumvented by fraud; but he alleges that there was no actual delivery of the property in question to the defendant, so as to perfect the gift.

The first question that arises upon the case is upon the admissibility of Barron as a witness, and we are of the opinion that the ruling of the court excluding him can not be sustained. It appears in the case that there was a residuary legatee, for whose benefit this suit was prosecuted, and that this legatee had indemnified the administrator against any liability for costs, and that the administrator (this plaintiff) declined to prosecute the suit without such indemnity. Now, if this residuary legatee had been offered as a witness, and it had been made to appear that he was really the party and the only party in interest, the objection to him might, perhaps, have been made, that he should not be allowed to testify, unless the administrator should elect to testify, or at least waive any objec-

tion that he might otherwise make to the testimony of the defendant.

But, as we understand the case, Barron was not the residuary legatee, but had only an interest in the question of costs, which, in a certain event, the administrator might be obliged to pay, because he had signed an indemnifying bond to the administrator, with or for the residuary legatee. Barron had no interest as party, but only an interest in the question of costs. We can not see, if his interest is to be held to exclude him as a witness, why the interest of any person shall not be held to exclude him, and in that way the statutes of 1857 and 1858, removing the disqualification of interest in witnesses, be virtually abrogated and annulled. We can not doubt, therefore, that Barron, under the circumstances, was a competent witness.

But this is a case where the plaintiff, by electing to testify, removes the ground of the exception he had taken. It is the same in principle as *Oakes* v. *Thornton*, 28 N. H. 44, and *Webb* v. *Lawrence*, there cited, where the exception rested upon the alleged incompetency of the plaintiff's proof to maintain his action, and that insufficiency was afterward voluntarily supplied by the defendant, by the introduction of the very evidence which had been lacking, on the plaintiff's part. See, also, *Clough* v. *Bowman*, 15 N. H. 515, and *Bowman* v. *Sanborn*, 25 N. H. 87. Here the election of the plaintiff to testify may properly be said to be voluntary. He was not compelled to make that election, and thus enable the defendant to be a witness in his own behalf, when otherwise he could not have been thus admitted. The testimony of Barron having been improperly rejected, he had only to rely upon his objection, and insist upon his legal rights. When, therefore, instead of relying upon the incorrectness of the ruling of the court, he voluntarily placed himself upon the stand, he must be regarded as having waived the

objection, the validity and force of which were avoided by his own conduct. *Tilton* v. *Tilton*, 41 N. H. 479.

We see no good ground of objection to the introduction of the bill of sale and the receipt, introduced by the defendant. Evidence had been offered to prove the genuineness of the signatures of Rickard to them, and the question being whether there had been a gift of the notes perfected by an actual delivery, it was of course competent to show what was done by and between the parties; and this bill and receipt, though not alone conclusive evidence of the fact, yet, when taken in connection with the statements and explanations of the witness, as to the manner and purpose of their being given, there would seem to be no doubt of their competency.

The ruling, excluding the testimony in regard to the correctness of the imitation of Rickard's signature by the defendant, was also correct. The true rule in such cases is laid down in *Bowman* v. *Sanborn*, 25 N. H. 110. "Ordinarily, in cases of dispute as to the genuineness of a signature, opinions of witnesses who have seen the person write are submitted to the jury as to the genuineness of the signature in question; but, where there are other signatures of the person in evidence in the case already, a comparison may be made by the jury between the signatures admitted to be genuine and the one in question, without the testimony of experts, and without any opinions from those who have seen the person write; or the party may call in the aid of experts, who may give their opinion as men of skill as to the genuineness of the signature in question, by comparing it with those signatures admitted to be genuine, though he has never seen the person write."

Now it is very clear that the evidence offered was not competent upon any of the grounds above stated, and it is not easy to see upon what ground it could be claimed to be admissible. It did not appear that the witness had

ever seen Rickard write, or that he knew any thing of his writing, except that he had seen one signature of his which the defendant showed him as genuine. Nor did it appear that the signature thus shown the witness was produced on trial. Nor does it appear that the witness was asked, or that the plaintiff proposed to ask him, whether the signature in question was, in his opinion, genuine, or otherwise.

Had it appeared that the witness was so well acquainted with Rickard's hand-writing as to be competent to give an opinion, he could only be asked such opinion in regard to the genuineness of the signature in question. The witness had seen a name, said by the defendant to be Rickard's, and had seen the defendant try to imitate that name upon a slab of marble, which had not been preserved; and the witness is now asked to state his opinion as to whether the defendant's effort to copy was successful, or otherwise. He was simply to give an opinion as to the correctness of an imitation. Now, supposing the witness to be an expert, how could he give an opinion in such a case by any rule or upon any principle known to the law? It is only between signatures admitted to be genuine, and which are in evidence before the jury, and the one in question, that the expert is allowed to institute a comparison, and give an opinion. But the case before us finds that this witness was not shown to have been an expert, and his testimony was rightly excluded.

We do not see any sufficient reason for allowing the former statements of the defendant to be introduced to corroborate his statements on the stand. If this testimony was competent, it would always seem to be proper, when a witness is impeached in that way, for him to introduce his own statements, made soon after the transaction, to sustain him; but that is not the rule. The witness can only put in his former statement, corroborating his account of the matter upon the stand, when such

former statement was made immediately after the transaction, and " before its ultimate effect and operation, arising from a change of circumstances, could have been foreseen" (1 Stark. Ev. 149); or where the same motives of interest would not have prompted him to make it that now operate, or where motives of interest would have prompted him to make a different statement. 1 Phill. Ev. 231. This evidence comes within none of the exceptions to the general rule that we have been able to find, and was, therefore, improperly admitted.

*French* v. *Merrill*, 6 N. H. 465, is cited as authority by the defendant for the introduction of this testimony; but there is nothing in that case, as stated in the report, or in the argument of counsel, which could furnish any ground for the plaintiff to introduce the statement made by his witness on the morning after the transaction stated. There is a remark in the opinion of the court, that this evidence was admitted to rebut the presumption of his statement on the stand, having been a recent fabrication; but there is nothing of that kind stated in the case; and it may be enough to say that the authority of that case has long been questioned. To make the former statements of the witness competent in his own favor, it should ordinarily be made to appear that, at the time he made the statement, he stood in some different relation to the cause or party, from that he now occupies, and that the change in his position has been such, that, though his present statement is in favor of his interests, yet that the former one, at the time it was made, must have been, or at least must have appeared to be, directly against his interests. And in any case such statements of a witness, made at any time, and offered as evidence in his own favor after he has been impeached, should be received with great caution. But in the case at bar we can not discover any such change of circumstances in the witness as to render the evidence competent on any ground.

The testimony of Bartholomew seems to have been still more objectionable, for, beside being only the statement of a party in his own favor, it does not even appear to have been made at the time of the transfer of the notes, or soon after, but may have been made any time in the life-time of Rickard. Had the defendant presented the notes to Bartholomew, or any body else, in Rickard's life-time, that fact might have been competent, because that would have been a fact bearing directly upon the issue. But we can not see that the statement of the defendant to this witness, as given in evidence, stands upon any different ground than the statements of any party in his own favor, which are too well settled to be incompetent to need any citation of authorities. Upon this general subject, see *Robb* v. *Hackley,* 23 Wend. 50, where *Bronson,* J., says : ·" As a general and almost universal rule, evidence of what the witness has said out of court can not be received to fortify his evidence." *Smith* v. *Stickney,* 17 Barb. 489. Mr. *Green-leaf* states the rule as follows : " Where evidence of con-tradictory statements by a witness, or of other particular facts, is offered by way of impeaching his veracity, his general character for truth being thus in some sort put in issue, it has been deemed reasonable to admit general evidence that he is a man of strict integrity and scrupu-lous regard for truth. But evidence that he has on other occasions made statements similar to what he has testified in the cause, is not admissible, unless where a design to misrepresent is charged upon a witness, in consequence of his relation to the party or to the cause ; in which case it seems it may be proper to show that he made a similar state-ment before that relation existed." 1 Greenl. Ev., sec. 469.

We can perceive nothing in the present case to bring any of the testimony offered on this point within the ex-ception to the general rule. The witness has sustained but one relation to the party or to the cause, and that re-lation has at no time been changed. The verdict must, therefore, be set aside and          *A new trial granted.*