By the Court, Balcom, J.
No error was committed upon questions respecting the handwriting- of the prisoner. Gkeenleaf says: “ It is agreed that if the witness has the proper knowledge of the party’s handwriting he may declare his belief in regard to the genuineness of the writing in question. He may also be interrogated as to *116 the circumstances on which he founds his belief.” (1 Greenl. Ev., § 576.) Gbeenleae also says one mode of acquiring this knowledge is “from having seen letters or other documents purporting to be the handwriting of the party, and having afterwards personally communicated with him respecting them, or acted upon them as his, the party having known and acquiesced in such acts, founded upon their supposed genuineness, or by such adoption of them in the ordinary business transactions of life, as induces a reasonable presumption of their being his own writings.” (1 Greenl. Ev., § 577.) Powers acquired a knowledge of the prisoner’s handwriting by seeing his signature at different times to from eight to twelve personal mortgages, which the prisoner recognized as instruments he had‘executed. The weight due to his opinion that the paper found upon the obstruction was in the handwriting of the prisoner was for the jury to determine.
The people had not the right to prove the general character of the prisoner was bad; and neither the court nor jury had the right to infer or presume it was bad because the prisoner did not prove it was good. The people were bound to prove the prisoner guilty, whether his general character was good' or bad. The fact that a prisoner’s general character is shown to be bad, after he attempts to prove it good, creates no presumption that he is guilty of the offence with which he is charged. The people must still establish his guilt by other evidence. Prisoners may be innocent of the crimes charged upon them though their general characters be bad. It is true the force of circumstances may be weakened by proof of the prisoner’s good character. But his failure to give such proof does not add anything to the weight justly due to the circumstances. The criminal law requires the prosecutor in all cases to prove facts and circumstances from which the concluson may be justly drawn that the prisoner is guilty before he can be pronounced guiltv *117 No proper fact or circumstance can be omitted because the character of the prisoner is bad. Were the rule otherwise, persons whose general characters are bad might be convicted of crimes of which they are innocent, for the reason that their characters are not good. When the prisoner does not go into the question of his character, the only inquiry for the jury is, whether the evidence establishes his guilt; and not whether his guilt would have been less probable if he had proved his general character was good. The tenderness of the criminal law is such that the bad character of the prisoner adds nothing to the force of the facts and circumstances against him, while it allows that proof of his' good character may weaken the effect of the same. It is not allowable to show, on the trial of an indictment, that the prisoner has a general disposition to commit the same kind of offense as that for which he stands indicted. Nor is it competent for the prosecutor to give evidence of facts tending to prove another distinct offense, for the purpose of raising an inference that the prisoner has committed the offense in question. (Barb. Cr. Tr., 353.)
The rule was laid down by the Court for the Correction of Errors, in The People v. White (24 Wendell, 520), that it is error for the judge to call the attention of the jury to the absence of proof of the prisoner’s good character. And in The People v. Bodine (1 Denio, 281), Beardsley, J., said, where no evidence of general character has been given, the subject of character is not one for the consideration of the jury. As to the weight that should be given to evidence of the prisoner’s good character, see Cancemi v. The People (16 N. Y. Rep., 501).
Welles, J.,
in delivering the opinion of the court in Ackley v. The People (9 Barb. 609), said: “A prisoner on trial may show What his reputation is, and then the question is open to the prosecution, and for the jury to determine, like all other controverted facts. But if the prisoner *118 chooses to give no evidence on the subject, the jury are are not at liberty to indulge in conjecture that his character is bad, in order to infer that he is guilty of the particular crime charged.”
The decision in The People v. Vane (12 Wend. 78) was disregarded in Robb v. Hackley (23 Wend. 50), and in Dudley v. Bolles (24 id. 465). And the other cases I have cited show it is not to be followed. It is in conflict with a well-settled principle of criminal law, and it must be regarded as overruled.
The charge of the court in this case was in substance that the fact that the prisoner had neglected or failed to introduce evidence as to his previous good character was an element in the case which the jury had the right to take into consideration in determining his guilt or innocence. This was clearly erroneous, and entitles the prisoner to a new trial.
The judgment of the Broome Court of Sessions should be reversed, and a new trial of the prisoner directed in that court.
Judgment reversed, and new trial ordered.