HENDERSON TUTTLE, PLAINTIFF IN ERROR, *v.* THE PEO-
PLE, DEFENDANTS IN ERROR.

*Perjury—Attesting Execution of Deed—Indictment, what sufficient averment.* .

It is perjury for a witness offering to attest the execution of a deed, falsely
and corruptly to swear that he knew the grantor, the individual described in
such instrument and who executed the same, that he was present and saw
the grantor sign, seal, and deliver the same as his own act and deed, and ac-
knowledge the execution thereof, and thereupon to subscribe the said instru-
ment.as a .witness of its execution..

An averment in the indictment that the oath was administered upon the
" Holy Scriptures " is in that respect sufficient.

WRIT of error to. the Supreme Court.—The Plaintiff in error
was tried and convicted at the Jefferson Sessions, .on an indict-
ment for perjury, in proving, as subscribing witness, the execution
of a deed to his wife from one Stephen Gifford. .It appeared on
the trial that Bennett Rice, the father-in-law.of the prisoner, died
intestate in 1857, and that his wife, and her sister, Mrs. Otis S.
Gifford, succeeded to portions of his property, embracing lands in
the town of Watertown. In January, 1859, Mrs. Tuttle and Mrs.
Gifford released to Stephen Gifford, for a nominal consideration,
their respective interests in the real and personal estate of their
.deceased father. On the 30th of April, the grantee and his son,
Otis S. Gifford, were at the office of John Clarke, a lawyer at
Watertown, when Mr. Clarke, who had been present at the
execution of the release, suggested a reconveyance, and drew up
a deed to Mrs. Tuttle, with that view. Stephen Gifford signed
it; Mr. Clarke subscribed it as attesting witness, and the deed
was handed to Otis S. Gifford, who was present at its execution,
to be delivered to his sister-in-law. He subsequently gave it to
Mrs. Tuttle, when she was at his house. The prisoner afterward
got it away from his wife, and she could not get it back. Her
brother-in-law, in July, 1860, saw him, and requested him to
return it to her. Tuttle replied that the deed was good for
nothing; blamed Otis for taking such a deed, and said that he

never would have taken it if he had been there. He retained the conveyance as late as the spring of 1862, when he showed it to his brother. His wife, however, afterward regained possession of it ; and in the fall of 1863 she delivered it to Mr. Moore, of Watertown, who was her attorney in the prosecution of the civil actions against her husband. It remained in his possession, tied up in the bundle of papers relating to those suits, until shortly before the prisoner presented it for record, when it was surreptitiously taken from his office. He was unable to trace it, until, on inquiry, he found it with the County Clerk. In the meantime it had been taken by the prisoner to the office of Jesse T. Reynolds, his attorney in the defence of those suits, who was also a justice of the peace. It appeared on the trial, by the testimony of the prisoner's brother, who was one of the witnesses in his behalf, that in the spring of 1862, and before the difficulties between Tuttle and his wife resulted in a separation, the brother took a mortgage from her covering property she inherited from her father, to secure to him the payment of $900. The witness expressed the opinion that the loan was made to her; but he admitted that though she was present, and was the party executing the mortgage, he paid the money in fact to her husband, and not to her. The brother borrowed the money from the bank on his own note, endorsed by the prisoner and his father, and left the mortgage as collateral security for the payment of the note. He afterward negotiated a transfer of the mortgage to a Mr. Paddock. When the abstracted deed was taken by the prisoner to Reynolds in the spring of 1864, he explained to him, as Reynolds admitted in his testimony, that the mortgage taken from his wife by his brother had been sold to Paddock, who made it a condition that the prisoner should give a collateral mortgage; that he gave such a mortgage, and that the reconveyance by Gifford to her needed to be on record to perfect her title to the land she had mortgaged. The matter seems to have remained some time under advisement, as Reynolds testified that the deed was in his hands at least six weeks or two months before it was acknowledged. At some time during this period, and shortly before the day on which the prisoner proved its execution

by his own oath, Reynolds drew a certificate at the foot of the deed, reciting proof of its execution by Mr. Clarke, the subscribing witness, and went to him to take such proof. Mr. Clarke at once assented; but recalling, on second thought, the difficulties between Tuttle and his wife, he asked where the paper came from. Reynolds replied, from Tuttle. Mr. Clarke said under those circumstances he could not consent, but if it came from Mrs. Tuttle, he would. Reynolds afterward reported the result of this interview to Tuttle. He says the prisoner then asked him if *he* could not acknowledge it; and he states his reply as follows: "I told him, if he was present and saw it signed and acknowledged, he might acknowledge it in place of Clarke; I erased Mr. Clarke's name in the body of the certificate, and put in his, and he thereupon sat down and wrote his name under Mr. Clarke's name. I think I said to him, that if he saw the deed signed, sealed, and acknowledged, and delivered, he could then put his name to it and acknowledge it in place of Mr. Clarke." On being asked why he did not take the proof himself, the witness answered: "For the reason that Mr. Clarke had said he thought there was something wrong about Defendant's having the deed, and I thought if there was anything wrong, I might be implicated." He testifies that the partial erasion of Mr. Clarke's signature as subscribing witness, which afterward appeared in the paper, was not then made; but his name stood plain and full; and that the prisoner took the paper and did not return it. The Deputy Clerk swears that the prisoner delivered it to him the same day; and Mr. Clarke testifies that he found it in that condition at the Clerk's office, and that the erasure was not made by him, nor was it there when Reynolds brought it to him to be proved. After leaving the office of his attorney, the prisoner went before a magistrate and testified to the following specific facts: "That he resided in Watertown; that he knew Stephen Gifford, the individual described in, and who executed the conveyance; that he was present and saw Gifford sign, seal, and deliver it, as and for his act and deed, and that Gifford *then* acknowledged its execution, *whereupon* he (Tuttle) became the subscribing wit-

ness thereto." The fact last stated was proved to be false by the witnesses on both sides. There was evidence which would fully justify the jury in finding that the prisoner was not present when the deed was executed. The grantee, the lawyer who proposed its execution and drew the instrument, and the party to whom it was delivered, were all sworn. Each testified that the other two were present ; and though two of them could not swear positively that Tuttle was not there, neither of them remembered that he was, and tended strongly to confirm the truth of the prisoner's subsequent declaration, that he was not present, and the positive oath to that effect of Otis S. Gifford, to whom, as all agree, the deed was delivered for Mrs. Tuttle, though this was before the date of the difficulties between her and her husband. Spence, a witness called by the prisoner, gave testimony tending to show that he saw the accused at Mr. Clarke's office on some occasion of that nature, when old Mr. Gifford was there, and when Otis S. Gifford was not; but his evidence was of a vague and unsatisfactory character, and it did not appear that any deed was executed on that occasion. Various questions were raised, as to the sufficiency of the indictment, the validity of the deed, the admissibility of evidence, the materiality of the facts proved by the prisoner's oath, the absence of one of the justices for a few moments from his seat, and the instructions of the Court to the jury, which are adverted to in the opinion, so far as they are deemed material. The jury found the prisoner guilty ; and the conviction was sustained at the General Term in the Fifth Judicial District, the opinion of the Court being delivered by Mr. Justice Mullin.

*A. H. Sawyer* and *James F. Starbuck* for Plaintiff in Error.

*Bradley Winslow* and *Samuel H. Hammond* for Defendants in Error.

PORTER, J.—The deed was not the property of the prisoner. He was at variance with the grantee, and had an interest in having it recorded. He desired to have a debt collected from her property, for which he had collaterally mortgaged his own. To secure this end, it was not enough that the title, with which she

had once parted, had been afterward reinstated, unless he could establish that fact by legal evidence. Having clandestinely obtained the deed, he encountered, in the refusal of Mr. Clarke, an unexpected impediment in the way of having it proved and recorded. He could not compel the subscribing witness to make the proof, as he did not hold under the grantee (1 R. S. 758, § 13). The device to which he resorted was the only available mode of securing the record evidence he desired. The grantor resided in the same town; but he could not apply to him for an acknowledgment, without the risk of detection and exposure, before the deed surreptitiously taken from the office of Mr. Moore could be recorded and returned. It was not enough, however, that he was ready to personate the character of subscribing witness, which he supposed he could do with safety, under cover of the justice's advice. The statute required an oath of the truth of the facts, essential to satisfy the officer taking the proof, and to justify the clerk in recording the instrument (1 R. S. 758, §§ 12, 15). To attain the desired end, he complied with this condition. The oath was administered in due form and by a competent officer. The facts to which he testified were material to the inquiry which it was the duty of the magistrate to make; and if his testimony was wilfully and corruptly false, he was guilty of the crime of perjury (2 R. S. 681).

There is no force in the objection, that the deed, which he proved, was void for uncertainty. That was a matter over which the magistrate had no jurisdiction, and as to which the prisoner gave no testimony. The object of the proceeding was, to secure record evidence of the execution and contents of the instrument; and if the facts to which he swore were material to that issue, the ultimate failure of his purpose through any inherent defect in the description would not mitigate the turpitude of his crime. But the deed was valid and effectual, as a reconveyance of the property inherited by Mrs. Tuttle from her father (Jackson v. Delancey, 4 Cowen, 427).

It is claimed that the indictment is bad, in charging that the oath was administered to the prisoner on "the Holy Scriptures,"

instead of the "Gospels," the term used in the statute (2 R. S. 407, § 82). The Scriptures include the Gospels, and the statute is complied with when the oath is administered either upon the Evangelists, the New Testament, or the Bible, which embraces the whole Gospel of revealed religion. It was unnecessary in the indictment to specify the particular mode in which the prisoner was sworn; and the averment that the oath was administered by the magistrate in due form of law, is amply sufficient, even if the clause in question were to be rejected as surplusage (Dodge v. State, 4 Zabriskie, 455; People v. Phelps, 5 Wendell, 9; People v. Warner, id. 271; People v. Cook, 4 Selden, 84, 85).

It was also unnecessary to aver, in the indictment, the antecedent circumstances connected with the title of Mrs. Tuttle to the property embraced in the deed; though it was proper to prove them on the trial, for the purpose of showing the relations which subsisted between her and the prisoner, and the motives which led to the commission of the crime. It was sufficient to allege the substantial and specific facts constituting the offence, without setting forth the evidence by which the truth of the averments was to be maintained.

There was no error in permitting the witness, Clarke, to testify to his refusal to prove the execution of the deed, when applied to for that purpose by Reynolds. The application was made at the request of the prisoner, and the result was reported to him by the messenger. It was part of the res gestæ, and it was material as matter of inducement.

Evidence was properly received, showing that the deed was surreptitiously taken from the office of Mrs. Tuttle's attorney. It had a legitimate bearing on the question of the prisoner's good faith, and reflected light on the motives which governed his subsequent action (Hennequin v. Naylor, 24 New York, 139; Hendrickson v. People, 10 id. 31; People v. Larned, 7 id. 452).

The motion to strike out the cross-examination of the prisoner's brother was properly denied. His testimony showed the facts in relation to the two mortgages, and the inducement to the commission of the offence. The statement of the prisoner to Reynolds,

the justice, was admissible for the same reason; and, as he sought to shield himself under the advice of this witness, it was the right of the prosecutor to ascertain the state of facts on which that advice was obtained.

The judge was right in refusing to instruct the jury in accordance with the various propositions submitted by the prisoner's counsel. The only one calling for particular observation is the request to charge that, "if the jury believe the Defendant was present, and saw the deed executed and delivered, then if he thereafter set his name to it as a witness, and made the proof of acknowledgment, believing he had the right to do so, no conviction can be had." Such an instruction would have been inapplicable to the facts, and could only have tended to mislead the jury as to the law. There was no evidence on the trial that the prisoner was present and saw the deed executed and delivered. No such fact was proved by the witness Spence. On the occasion to which he refers, Otis S. Gifford, the party to whom the deed in question was delivered, was not with his father. Mr. Clarke, the elder Gifford, and Spence were the only persons there; and it does not appear that any deed was executed at that time. The evidence for the prosecution might not be sufficiently conclusive to satisfy the jury that the prisoner was absent when the deed in question was executed and delivered to Otis S. Gifford; but there was no evidence to justify them in finding, affirmatively, that he was present at such execution and delivery. The judge had no right to submit to them a mere matter of speculative belief not arising upon the proof. The proposition was also objectionable, as tendering to the jury a false issue on the principal question in the case. A mistaken *belief* by the prisoner that he had a right to substitute himself for the subscribing witness, at a subsequent period, without the knowledge of the parties, and that he could thus make himself a competent witness to prove the instrument for his own pecuniary benefit, could not justify him in falsely swearing that he became the subscribing witness, in fact, at the time the deed was executed. If he had testified to what he now claims to be the truth, on his

examination by the magistrate, and had frankly stated that Mr. Clarke was the subscribing witness who became such at the time of its execution, and that four years afterward, without the knowledge or consent of the parties, he erased the name of the subscribing witness, and became such in his place, the proposition of the Defendant's counsel would have been more pertinent to the issue. The judge, however, gave him, in another form, the substantial benefit of the instruction. He charged the jury, " that if the Defendant made the proof pursuant to the advice of his counsel, believing he might lawfully do so, the element of a corrupt intent would be wanting." He added a very appropriate caution to the jury, against overlooking the essential ingredient of good faith, in determining whether he really entertained that belief. " If you see," said the learned judge, " that there was a motive to induce the Defendant to want the deed on record, by reason of Mrs. Tuttle's mortgage to T. F. Tuttle, and of the Defendant's desire to have that mortgage foreclosed, to relieve the collateral—if the advice was given by Reynolds to fall back upon—if you believe it was arranged between the Defendant and Reynolds that Reynolds should so advise, for such purpose, then the advice would be of no avail as a defence." The soundness of this as a legal proposition is too clear for argument. So far as it was a commentary upon the tendency of the evidence on a question of fact, which the judge fairly submitted to the jury, it was not the subject of legal exception (People *v.* Vane, 12 Wendell, 78 ; People *v.* White, 14 id. 111 ; Commissioners of Pilots *v.* Clark, 33 New York, 267). It is quite apparent that the hypothesis of bad faith, suggested by the judge, is more in harmony with the proof than that of good faith, suggested by the counsel for the defence. The possession of the abstracted deed by the prisoner ; the delivery of it to his own attorney with the avowed purpose of putting it on record to promote his private advantage ; the unexpected delay for several weeks before the attempt was finally made ; the application through his attorney to the subscribing witness, whom both of them recognized as the proper party to make the proof; the omission, when

that attempt failed, to ask an acknowledgment by the grantor, who resided in the same town; the suggestion originating with the Defendant, that he should himself become a subscribing witness to the deed, and prove its execution ex parte in his own behalf; the guarded and hypothetical form of the opinion expressed by his attorney when that suggestion was made; the apprehension of the latter, after his interview with Mr. Clarke, that he might be implicated in the wrong connected with the possession of the instrument, and the consequent substitution of another officer to take the proof; the partial erasure, without his suggestion or sanction, and after the deed was taken from his office, of the name of the subscribing witness; all these were circumstances worthy of grave consideration by the jury in determining the question whether the prisoner, in good faith, entertained the belief which he professed, as an excuse for the falsity of his oath; and we see no reason to doubt that their conclusion was rational and just. It is due to the attorney to say that it appears by the proof that he was inexperienced as a magistrate; that he had been withdrawn for some time from professional pursuits by military services during the rebellion; that he gave his assent hastily and without reflection to the suggestion of the prisoner; and that, before it was finally acted on, he was led to withdraw from further participation in the matter, by the circumstances of suspicion which surrounded it.

It is made the subject of a grave allegation of error that, during the progress of the trial, one of the associate justices had occasion to leave the bench for a few moments to hand a paper to a person who was waiting in Court to receive it, and that he was some twenty feet from the presiding judge when an objection to the admission of a deed was overruled. The claim that this vitiated the proceedings is scarcely entitled to serious consideration. The Court was properly constituted, and all its members were in actual attendance. The statute neither requires that the judges should be seated during the progress of a trial, nor that they should be polled on the decision of every question of law. The rulings as to the admission and rejection of evidence are ordinarily made and

announced by the presiding judge, in the hearing of his associates, and with their presumed concurrence. The members of a judicial tribunal, from considerations of convenience, propriety, and decorum, usually occupy the particular seats assigned to them; but when a session is in progress, with a quorum in actual attendance, the casual and temporary absence of one of the judges from a seat thus assigned, neither breaks up the Court nor impairs the validity of its proceedings. If the justice, in the present instance, had desired to dissent from the ruling of the presiding judge, the announcement of that fact, from the position in which he happened to be at the moment, would have been just as effectual as if made from the seat on the bench which he had left a moment before, and to which he was then in the act of returning.

We think no error prejudicial to the prisoner occurred on the trial, and that the judgment of the Supreme Court should be affirmed.

Judges Hunt, Wright, Scrugham, Parker, and Davies, Ch.J., concurred in the foregoing opinion. Grover, J., concurred in the result; Bockes, J., was for reversal.

Judgment affirmed.

JOEL TIFFANY,<br>State Reporter.