*DUDLEY vs. BOLLES. [ *465 ]

A *servant* in charge of the property of his master, which has been injured or destroyed by the *negligence* of another, is a competent witness in an action *by the master* for the recovery of damages; but is not a competent witness in an action *against the master* for an injury to the property of another through his (the servant's) alleged *negligence*.

Evidence of previous statements made by a witness in *confirmation* of his testimony is in general inadmissible.

A traveller on horseback meeting another horseman or a vehicle on a public highway is not required to turn out in any *particular direction* to avoid collision; all that is required is prudent care under existing circumstances.

ERROR from the Chenango common pleas. Bolles sued Dudley in a justice's court, and declared against him in a special action on the case, " for driving immoderately and unlawfully, a mule in a cutter, on a public highway in the town of Smithville, so as to run against a certain mare in the possession of the servant of the plaintiff, in such a manner as to cause her death, on the 7th day of March, 1838." The defendant pleaded the general issue. The cause was tried by a jury, who found a verdict for the plaintiff, with $40 damages, on which judgment was rendered. The defendant *appealed* to the Chenango common pleas. On the trial in that court a motion was made to nonsuit the plaintiff because it was not stated in the declaration that the act complained of was done *negligently*, and that title in the mare either absolute or limited was not alleged to be in the plaintiff. The court refused to grant the nonsuit. The plaintiff called *Augustus Bartle* as a witness. He was the servant of the plaintiff, and rode the mare at the time of the injury. The defendant objected to his competency as a witness, but the objection was overruled, and he was sworn.

He proved that the defendant's mule, being on a trot in the cutter, struck and killed the plaintiff's mare, while the witness who was riding her, was in the act of turning out on the side of the road upon his left, [ *466 ] with a view to avoid the cutter. This witness was *contradicted as to some particulars, and it was proved that he had made statements materially variant from his testimony, in court. In reply, the plaintiff offered proof that, about the time of the accident, he had made statements to other witnesses conforming to what he had sworn on the trial. This was objected to; but the evidence was received. The defendant requested the court to charge that the plaintiff's servant was bound to turn to the right with his mare, on meeting the cutter. This they declined to do : and on the contrary, instructed the jury that the servant was not in fault for turning to the left. The defendant excepted to the several decisions of the court and to the charge; and the verdict and judgment being against him, he brought error.

*H. R. Mygatt*, for the plaintiff in error.

*W. M. Patterson*, for defendant in error.

*By the Court*, COWEN, J. The defendant cannot take advantage of a defect in the declaration by a motion to nonsuit the plaintiff. The objection should be taken by demurrer, or in arrest of judgment, or by writ of error. The averment of *immoderate* driving may, perhaps, be considered as equivalent to one of *negligent* driving; and in this respect the declaration here sustainable on error after verdict; though the same thing can perhaps hardly be said of the total omission to shew *property* in the mare. The declaration was simply for an injury to a mare in possession of the plaintiff's servant. This might as well be the mare of a stranger as of the plaintiff. The objection certainly would not lie upon *certiorari* after a full trial on the merits, it appearing by the return of the justice that property was made out in fact. The only mode of raising the objection in such case would be by demurrer ; but on appeal, the evidence is not returned, nor is it brought here by a bill of exceptions in such a form as to supply any defect in the declaration which would not be cured by verdict at the common [ *467 ] law. The total omission to show title to the *property for which the plaintiff below recovered is clearly such a defect. As the cause must go down for a new trial, for error appearing in the bill of exceptions, the plaintiff below should in prudence obtain leave to amend.

Was the plaintiff's servant a competent witness ? - His negligence was clearly in issue ; and if the injury imputed to the defendant arose from such negligence, the witness was liable to the plaintiff. A recovery against the

defendant would not, however, have the effect in itself to exonerate him. His negligence in truth causing the death of the mare, the master might sue and recover against him notwithstanding an uncollected verdict and judgment against the defendant. The servant is equally a wrongdoer and equally liable although the master recover against another as the real wrongdoer, on the strength of the servant's testimony. In ordinary cases it is perfectly well settled that where you sue one of two joint wrongdoers, you may resort to the other as a witness. This is allowed in England even where a recovery against one operates *per se* as a bar to an action against the other; *a fortiori* in this state, where it is so only *sub modo*, and not till the plaintiff has finally elected to collect of the first by at least taking out execution. The plaintiff's *agent* is constantly received for him, even where his negligence would defeat the action and turn the plaintiff's remedy upon the witness. But the cases are conflicting as to the *servant*. When called for the defendant, all cases agree that he is not admissible. The verdict against the master would, in such case, always be evidence against him to show the amount of damages for which he may become liable over ; 1 *Phil. Ev.* 56, 131, *Cowen & Hill's ed., note* 95, *p.* 106, 7 ; *note* 244, *p.* 256 ; *id. p.* 1530, 1 ; and with us, I apprehend, it would be conclusive, on proving that he had notice, and was called on to defend the original action. He stands in the relation of an indemnitor or a warrantor against an injury. The argument for exclusion thus becomes obvious and conclusive. Clearly, however, the same principle does not apply when he is called for the plaintiff. The verdict is not evidence against him, though his master should fail in the action. *Phil. Ev.* 99, 8*th* ed. The *failure [ \*468 ] may arise from causes over which the servant never had any control, and for which he is not accountable : such as the want of proof, or negligence in the conduct of the cause. ' On the other hand, it is true his own oath may in the result work a recovery against another, and a consequent satisfaction exonerating him. So of the agent and joint wrongdoer. They are brought up as witnesses to work the same consequence in their own favor. So the endorser of a promissory note, called by his endorsee against the maker. Yet he is uniformly received in England ; and though not, perhaps, yet receivable with us, he certainly is by several courts in this country. The effect of the servant's testimony in his favor is contingent, nothing more ; and it is a general rule that mere contingent interest shall not exclude a witness. In what cases it shall be deemed contingent the authorities are not uniform ; and perhaps least of all on the point now presented.

When Mr. Phillipps wrote his 7th edition, he felt authorized to do no more than notice the exclusion of the servant, when his master was defending. Westminster Hall seems not to have been considered as having spoken decisively against his admission for the master when plaintiff, though the point

had been directly decided in *Moorish* v. *Foote*, 2 *Moor*. 508, 8 *Taunt*. 453, and *Miller* v. *Falconer*, 1 *Camp*. 251; and there were several other cases which went that length in principle. Such were all those which held that in an action against one for a debt due from him and another, the latter could not be received as a witness for the plaintiff, because by promoting a recovery he might place himself in a condition of security. We had occasion to notice several of these cases in considering *Collins* v. *Ellis*, 21 *Wendell*, 399, 400. Several American cases are there cited to the same effect, and one or two in this court. *Collins* v. *Ellis* is itself one of this character. The witness was called to raise a fund in the hands of the defendant by which the witness' own debt might be discharged. Soon after Phillipps' 7th edition was published, a series of *nisi prius decisions* took place by which the doctrine was entirely settled in England, so far as it [ *469 ] could be by that class of decisions, that *where the master sues for a negligent injury done to his property in the hands of his servant, the latter is equally inadmissible for the master as if he were defendant. They are collected in the notes to that edition by *Cowen & Hill pp.* 107, 1526 *and* 1530. I shall not go over them. The last is *Sherman* v. *Barnes*, 1 *Mood. & Rob.* 69, which was the very case now before us. The plaintiff's horse being driven by his servant was run against and injured. On his calling the servant and partly examining him, Tindal, C. J. struck out his testimony, though he expressed himself dissatisfied with the principle on which such witnesses were rejected. In the still later edition of Phillipps, by him and Amos, (8th ed.) 100, it is said to be established by this and other cases, that " where a witness is so connected with the dispute in a particular action, that a verdict for the plaintiff would entirely relieve the witness from a liability over, to a subsequent action, which the plaintiff might bring against him if the defendant were to succeed, such witness will be incompetent to give evidence on behalf of the plaintiff, by reason of a direct interest in the event of the cause." *Moorish* v. *Foote* was a decision in *banc;* and in *Sherman* v. *Barnes*, the chief justice of the C. P. considered it as controlling, though he differed from it in principle. In *Wake* v. *Lock*, 5 *Carr. & Payne*, 454, Lord Denman, C. J. inadvertently received as a witness for the plaintiff, his servant, in whose hands the plaintiff's fly was damaged by collision with the defendant's waggon; but declared he should not have done so, had *Moorish* v. *Foote* been mentioned. Truly, therefore, the question seems to be settled in England against the servant's admissibility. The last English case I have seen, *Robinson* v. *Fereday*, 8 *Carr. & Payne*, 752, (A. D. 1839,) still adheres to the rule. Following these cases, we must hold that Bartle the witness here, was directly interested.

On the other hand, the counsel for the defendant thinks that *The United*

*States Bank* v. *Stearns*, 15 *Wendell*, 314, 316, is conclusive in·favor of his admissibility.   The plaintiffs sued for an overpayment by their teller made, as he swore, by mistake ; and he was received as a competent *witness for the plaintiff.  The question turned on the words   [ *470 ] of his surety bond, and the necessity of admitting an agent although interested.   That he was testifying in favor of a recovery which might place him in a state of security against an action by the bank, for their money, which he had carelessly paid out, does not seem to have been noticed.   He was thought to come within the general rule that an agent or servant is admissible as a witness for his principal.   I recollect no case in this court directly denying the principle of *Moorish* v. *Foote*, though I take it that principle was involved in *The United States Bank* v. *Stearns*.   It has often been recognized in respect to matters of contract, as may be seen in *Collins* v. *Ellis.*   In *Johnson* v. *Harth*, 2 *Bailey*, 183, it was denied in respect to a servant, by the court of appeals of South Carolina.   The action was by the endorsee against the endorser ; and the notary who acted in behalf of the plaintiff had neglected to give the regular notice ; yet he was received as a witness for the plaintiff to show a state of facts rendering the defendant liable, notwithstanding the omission.   It was agreed that the witness was liable directly or indirectly to the plaintiff for his negligence. That was in issue, and his oath might secure him against an ͵ action.   But the court, by Harper, J., said the interest was contingent, whereas to disqualify the witness it must be certain and immediate.   Per Kennedy, J. in *McDowell* v. *Simpson*, 3 *Watts*, 135, *S. P.*   This doctrine derives countenance from all that class of English and American cases before noticed, and which are very numerous, holding that one of two joint wrong doers, off the record, is admissible for the plaintiff in an action for the wrong.   21 *Wendell*, 402.   1 *Phil. Ev.* 41, 47, *Cowen & Hill's* ed. and note 75, *p.* 70. *Id. p.* 1511, 12.   It has been impossible for me to see that the reason in the case at bar is stronger for the exclusion of the witness, than it is in respect to one of two joint wrong doers.   In England it would certainly not be so strong.   Yet the servant, the *supposed* wrongdoer, is excluded by one class of cases, while the co-trespasser, the *acknowledged* wrongdoer is admitted in the other.   The distinction *against admitting the ser·   [ *471 ] vant is evidently disapproved of by the modern English judiciary ; but they all deem themselves committed by *Moorish* v. *Foote*, and other cases.   We are, I think, not so committed, though I thought we were in *Collins* v. *Ellis*, against receiving one of two alleged debtors to charge ·the other.   Had the question been *res integra*, the propriety of our decision there might be well doubted as being against the salutary inclination of courts to enlarge the sphere of competency.   We are not bound by the modern decisions of Westminster Hall, though I confess we always ought to

disregard them with great hesitancy.    I admit the question is by no means free from difficulty ; but my own mind has been determined mainly from a fear that if we adopt the English cases, we may be called on by an argument beyond the power of resistance, for aught I see, to bring within their principle, brokers and other agents.    The teller in the *United States Bank* v. *Stearns*, was but a servant.    Agents, attorneys and trustees are very commonly in the same case with servants.    It has already been asserted by a learned judge in a neighboring state, on the authority of *Starkie's Evidence*, that where the agent is called to prove the performance of some duty or contract for the plaintiff, he is incompetent.    *Dennison* v. *Hibbard*, 4 *Verm. R.* 499.    The principle of necessity has been asserted in such cases.    But by what considerations is that necessity to be limited ?    Is not the principle of contingent liability much more certain and intelligible ?    It is better settled ; for some modern books on evidence deny that necessity should be admitted as a ground for receiving a witness.    Where he is directly liable over as a consequence of the recovery, it is necessary that he should be released.    If not so, the books are full of the principle that he is incompetent.    There is no general rule better established than that servants are competent witnesses for their masters.    Yet if the principle of *Moorish* v. *Foote* were to be liberally applied, the professed exception would overcome the principle.    Servants, agents and trustees, when called as witnesses to sustain the transaction in which they have been engaged, are generally subject to [ *472 ]    the imputation of having *an interest to support it; for they are liable if it fail through their negligence.    The true answer is that the interest is contingent.    The record can in no way affect them ; though they may be liable should their principal fail in the action.    What possible difference is there between servants and agents ?    And if the former are repudiated as incompetent, why not the latter ?    All persons acting in the employment of another, are servants within the rule : attorneys, solicitors, sheriffs, &c.

I am unwilling, on the mere force of authority even in Westminster Hall, to adopt a principle verging towards the exclusion of whole classes heretofore deemed competent.    On the whole, we think Bartle was properly received as a witness.

. The reception of Bartle's statements in confirmation of his testimony, was erroneous.    We have recently in *Robb* v. *Hackley*, 23 *Wendell*, 50, *et seq.* reconsidered the *dictum* to the contrary in *The People* v. *Vane*, 12 *Wendell*, 78, and agreed that consistent statements cannot in general be received in reply to the contradictions of a witness ; *a fortiori* are they inadmissible in answer to direct and positive contradiction by other witnesses.

There is no law of the road requiring a man on horseback, when meeting a horse or vehicle, to turn out on the *right* or *left* side.    The rider must

govern himself in this respect according to his notions of prudence at the time, under the circumstances.

Judgment reversed ; venire de novo from the court below.