In the Matter of the Probate of the Last Will and Testament of EDWARD D. HESDRA, Deceased.

*Court of Appeals, January 14, 1890.*

Affirming 49 Hun, 609, Mem.

1. *Appeal. Review.*—On appeal from a judgment of the general term of the supreme court, affirming a decree of the surrogate admitting a will to probate, the court of appeals has no power to re-examine the question of fact determined by the trial court, and can only look into the evidence for the purpose of seeing whether there is any proof to support the findings of that court.

2. *Will. Evidence.*—The declarations of a subscribing witness are competent, *it seems*, to impeach the execution of a will; and the death of the witness does not deprive the party of the benefit of such evidence.

3. *Same.*—The declarations of a deceased subscribing witness, however, have no other effect than to impair the force of his signature as evidence of the performance of the conditions stated in the attesting

clause, and leave the question of fact whether the will was properly executed to be determined by the trial court upon all the evidence in the case.

4. *Same. Forgery.*—Where, in proceedings to probate a will, evidence is given sufficient to sustain a finding that the signatures to the will are genuine, the surrogate is not required to refuse probate by proof of declarations on the part of a deceased subscribing witness to the effect that he fabricated the will.

5. *Same.*—Proof of circumstances bearing upon the question of the authenticity of the will, in connection with a regular attestation clause duly executed, is, if sufficient to satisfy the court of its genuineness, all that is required to sustain the probate of a will.

6. *Same.*—The absence of any motive for its fabrication on the part of the subscribing witness who subsequently declared that he had forged it, is a strong circumstance in favor of the genuineness of the will.

7. *Same. Declarations.*—The declarations of a deceased subscribing witness, made after the testator's death, that he had fabricated, or intended to fabricate, a will for him, may be rebutted by proof of his declarations, made during the testator's life-time, that the latter had made a will.

Appeal from a judgment of the general term, affirming a decree of the surrogate admitting a will to probate.

*Wm. W. MacFarland,* for appellant.

*Garrett L. Snider* and *Gratz Nathan,* for respondents.

RUGER, Ch. J.—Probate of the will of Hesdra was contested before the surrogate, upon the allegation that it was fabricated, by Amanda Tordoff, claiming to be a niece and sole heir at law and next of kin to the deceased; by Estelle Esdra, also claiming to be one of the heirs at law and next of kin; and by Charles F. Tabor, attorney-general, on behalf the state, claiming that said Hesdra died intestate, and his property escheated for lack of heirs and next of kin.

The surrogate found the will to be genuine and admitted it to probate. From this decision Amanda Tordoff and the attorney-general alone appealed, and, upon an affirmance by the general term of the decree of the surrogate, the same parties appealed to this court. The principal contest on the

trial was over the genuineness of the signatures of the testator and one of the witnesses to the will, the contestants claiming that they were forgeries, and that the will and signatures were the work of the other witness to the will.

The undisputed evidence showed that the testator, Hesdra, was a native of Port-au-Prince, in Hayti, coming to this country in 1833, and died June 6, 1884, at Nyack, of the age of 76 years. He was a colored man, and had been married to a colored woman, but had no children. The wife was apparently a person of some business capacity, as she had accumulated considerable property, which, upon her death, in 1879, she left by will to her husband, Edward D. Hesdra. This property consisted mainly of real estate situate in the city of New York and the village of Nyack, and was valued, at the time of Hesdra's death, at about $100,000. Hesdra's wife had a large number of relatives, all colored people, who joined in contesting the probate of Mrs. Hesdra's will; but the contest resulted in a decree by the surrogate of New York, shortly before Hesdra's death, establishing the validity of the will and awarding him the property. Hesdra was a believer in the Jewish faith and belonged to a Jewish society at Nyack.

So far as the evidence disclosed the facts, Hesdra's will was first discovered by Millard F. Onderdonk, the executor, among other valuable papers belonging to his father, John V. Onderdonk, about the middle of December, 1886, more than three years after its purported execution. These papers were in a desk which John V. Onderdonk, being dangerously sick, requested his son to take charge of and remove to his own house, and upon examining which the son found the will with some life insurance policies in an envelope filed as containing excise papers. The son immediately took counsel of a reputable attorney as to the disposition of the papers, and acted always after that time, until the will was presented to the surrogate for probate, under the advice of his attorney. At the time the papers came into the pos-

session of the executor, John V. Onderdonk was confined to his bed by an illness from which he never recovered, and which terminated in his death February 6, 1887. Much of the time between these dates he was delirious and unconscious, and was during the whole period incapable of examination as a witness. Upon the death of Hesdra, a will not being produced, a controversy sprang up between Amanda Tordoff, claiming that Hesdra died intestate, and that she as sole heir-at law and next of kin to Hesdra was entitled to letters of administration on his estate, and the attorney-general, claiming also that Hesdra died intestate, but left no heirs or next of kin, and that his property, therefore, escheated to the state. John V. Onderdonk was examined as a witness on behalf of Mrs. Tordoff in that controversy and gave evidence which, although somewhat evasive, tended to show that Hesdra had made no will. The contest resulted in a decree by the surrogate awarding letters of administration to Mrs. Tordoff. She thereupon took possession of both Hesdra's real and personal property, and has since remained in possession and control of it so far as appears in the case.

The will in question bore date September 3, 1883, and purported to have been executed at that time and to have been witnessed by John V. Onderdonk and Thomas Fotheringham, who, together with the testator, were at that time residents of Nyack, Rockland county, but were both dead when the will was offered for probate.

The body of the will was concededly in the handwriting of John V. Onderdonk, and the genuineness of his signature as a witness thereto was not disputed. The will was regular in form, and the attesting clause was full and contained all of the requirements of the statute necessary to constitute a valid will. The case was tried by the contestants altogether upon the theory that the will was fabricated after Hesdra's death, by John V. Onderdonk, and that the signatures of the testator and Thomas Fotheringham thereto were forger-

ies.   It appears that Onderdonk and Fotheringham signed
the will as witnesses in two places, once at the bottom of the
will and again below the attestation clause.

The proponent produced on the trial numerous witnesses
who testified to an acquaintance with the handwriting of
both the testator and Fotheringham, and their belief that
the respective signatures to the will were genuine.   He also
produced a number of experts who, from a comparison of
the handwriting of the testator and Fotheringham with ex-
hibits proved in the case, testified that in their opinions the
respective signatures were genuine.

On the part of the contestants the proof consisted wholly,
except that of two witnesses who testified against the
genuineness of the testator's signature, of evidence as to the
declarations and conduct of John V. Onderdonk, subsequent
to the time of the making of the will, tending to show that
the instrument was fabricated by him after Hesdra's death.
The evidence showed that John V. Onderdonk had long
been a resident of Nyack, of some prominence as a business
man, and was, at the time of the alleged execution of the
will, engaged in the business of supplying the citizens of
that village with water from springs located on Hesdra's
land, for which he paid Hesdra rent.   He was also em-
ployed in collecting rents, buying and selling real estate
for other people, occupying an office in the Onderdonk
Block adjoining the store of Fotheringham in the same
block, who carried on business as a painter.   The relations
between Hesdra and Onderdonk were friendly and familiar,
so much so that upon Hesdra's death, when the question
was raised whether he left a will, it was generally assumed
by those acquainted with them that Onderdonk would be
most likely to know whether he did so or not.

A large number of the genuine signatures of both Hesdra
and Fotheringham were produced and put in evidence, and
no materials were lacking on the trial to test the question
of the genuineness of those signatures, or to enable the trial

court intelligently to determine such questions.   The contestant concedes the rule that this court has no power to re-examine the question of fact determined by the trial court and can only look into the evidence for the purpose of seeing whether there is any proof to support the findings of that court.   Matter of Cottrell, 95 N. Y. 329.   He therefore claims that there is no evidence to support the finding of the surrogate, and presents an ingenious argument to show that all of the numerous facts proved by the proponents do not tend to establish the genuineness of the contested signatures to the will.

It seems to us that the whole argument bears only upon the question of the weight of evidence and falls entirely short of showing that no material evidence was adduced in proof of the due execution of the will.

Upon a careful reading of the evidence we are convinced not only that there was abundant evidence to support the finding that the respective signatures of the testator and Fotheringham to the will were genuine, but that a contrary finding would have been against the weight of evidence.

Some question has been made by the respondent as to the competency of the declaration of a subscribing witness to impeach the execution of a will ; but the case of Losee v. Losee, 2 Hill, 612, seems to be an authority for the admissibility of such evidence.   It is there said that "proof of the signature of a deceased subscribing witness is presumptive evidence of the truth of everything appearing upon the face of the instrument relating to its execution, as it is presumed the witness would not have subscribed his name in attestation of that which did not take place.   But this presumption may be rebutted and hence the propriety and even necessity of permitting him to be impeached in the usual mode, as if he were living and had testified at the trial to what his signature imports.   The reason for admitting such evidence in a case like the present was stated by Bay-

ley, J. in Doe v. Ridgway, 4 Barn. & Ald. 55, thus: He (the attesting witness to a bond) must have been called, if he had been alive, and it would then have been competent to prove, by cross-examination, his declarations as to the forgery of the bond. Now the party ought not by the death of the witness to be deprived of obtaining the advantage of such evidence." The competency of this evidence is supported by an able note to the case from the learned reporter of the court, who was peculiarly qualified to discuss questions relating to rules of evidence.

Assuming, therefore, for the purpose of this decision, that all the evidence produced by the appellant was competent and that the declarations of a subscribing witness are competent to impeach its execution, a question which we do not decide, as the decision being in favor of the appellant, it becomes unnecessary to do so, we proceed with the examination of the case. The declarations of the subscribing witness, Onderdonk, tending to show the forgery of the various signatures thereto, affected the credibility of the witness alone, and had no other effect than to impair the force of his signature as evidence of the performance of the conditions stated in the attesting clause, and still left the question of fact whether the will was properly executed to be determined by the trial court upon all of the evidence of the case. Assuming, as we must under the findings of the court, that all of the signatures to the will were genuine, it remained for the trial court to determine whether the contradictory declarations made by one of the witnesses thereto, subsequent to its execution, were of such a character as required the surrogate to refuse probate to the will. Such declarations could have no greater effect than the positive evidence of the witness upon the stand to the same effect, and yet, even under such circumstances, wills have frequently been admitted to probate upon corroborating evidence derived from circumstances. Matter of Cottrell, *supra*, and cases there cited. The Code expressly provides

that the proof of a will may be established when a subscribing witness has forgotten the occurrence of its execution, or testifies against it, upon proof of the handwriting of the testator and the subscribing witnesses, and of such other circumstances as would be sufficient to prove the will upon the trial of an action.   Section 2620.   This section received a practical construction in Brown *v.* Clark, 77 N. Y. 369; Matter of Pepoon, 91 Id. 255, and Matter of Cottrell, 95 Id, 329, and was held to mean, in accordance with prior decisions cited, that the proof of circumstances bearing upon the question of the authenticity of the will in connection with a regular attestation clause duly executed were, if sufficient to satisfy the court of its genuineness, all that was required to sustain the probate of a will.

In the Cottrell Case the probate was sustained where both of the subscribing witnesses denied the genuineness of their signatures to the attestation clause, as well as the performance of the conditions required by the statute.   An examination of the condition, situation and relation of the parties, the disposition of property made by the will, and the other circumstances bearing upon the probabilities of the case, satisfies us that there was sufficient corroborative evidence to establish the authenticity of the will.   It was entirely natural, under the circumstances of the case, that Hesdra should have made a will.   He was an aged man possessing a large property and having, as he had declared, no blood relations existing to inherit it.   He had had one brother by the name of Solomon who had died, leaving a widow but no children, except possibly Mrs. Tordoff, whom Hesdra sometimes claimed was not a daughter but was an adopted child of his brother, and this claim had color given to it by the fact that Mrs. Tordoff was apparently a white woman while both her alleged parents belonged unmistakably to the colored race.   His wife had left a numerous body of relatives with whom Hesdra had lived at times on terms of friendship and intimacy.   It was therefore quite

improbable that Hesdra should have desired to die intestate and leave his property to escheat to the state. There was evidence tending to show that the making of a will was in his contemplation at the time, as he had conversations with several persons in reference to the subject, and, among others, with Onderdonk, and about the time this will purported to have been made he stated to two persons, substantially, that he had made his will. It was also in proof that Onderdonk, on the day the will was executed, stated that he had drawn a will for Hesdra that day in which his son had been made its executor. A strong circumstance in favor of the genuineness of the will is found in the absence of any motive for its fabrication by John V. Onderdonk. He had apparently no acquaintance with or knowledge of any of the legatees therein except what he must have derived from Hesdra. Onderdonk could not have expected to derive any benefit from it, as it contained no devise of property either to himself or any relative or friend of his. The legatees were, except possibly Mrs. Tordoff, persons with whom he had no acquaintance and in whom he could have felt no personal interest.

On the contrary they were all persons and societies in whom the testator was naturally interested and whom he would, in accordance with the motives usually controlling persons in his situation, have desired to make the recipients of his bounty. The will was in all respects a reasonable one for him to make and such as a person of Hesdra's character, condition and situation would be supposed to have made. The great bulk of the property was given to the contestant and the members of her family who had lived with Hesdra and were the only persons who had any reason to claim to be of his blood. Aside from the bequests to charitable and religious institutions, the small remainder was given to the near relatives of the wife from whom he had received his property. The fact that he entertained feelings of hostility towards these legatees on account of their conduct in

contesting the proof of his wife's will, is not sufficient to show that it had overcome his feeling of natural justice that they should share in the property accumulated by his wife. At all events, there is no reason perceptible why Onderdonk should desire to fabricate legacies for their benefit, or for that of the religious societies with which Hesdra was connected. The provision in favor of Portlock, who was unknown to all except Hesdra by that name, is persuasive evidence of the influence of Hesdra's mind in the making of that legacy. The unnecessary repetition of the signatures of the two witnesses to the attestation clause, is quite inconsistent with the notion that one of them was a forgery. Why should he commit an unnecessary forgery rendering detection and exposure more probable? We do not think the conduct of the executor in delaying for a few weeks the presentation of the will for probate after he discovered it is justly subject to criticism, as he was at that time acting under the advice of counsel and there were many obvious reasons why he should not adopt a precipitate line of conduct.

The suppression of the will by John V. Onderdonk, however, for three years and upwards, with his frequent declarations after Hesdra's death that he left no will, and his evasive evidence before the surrogate on the contest for letters of administration, constitute strong evidence of his want of principle and integrity and a reason why great suspicion should attach to any evidence given, either directly or indirectly, by him. A very pertinent inquiry arose on the trial as to the reason which influenced this conduct, and a solution of this question could not fail to bear strongly upon the question of the genuineness of the will. It may easily be conjectured why he should suppress a valid will, but it is difficult to conceive how he could entertain the idea of fabricating a will while he was making at the same time repeated declarations that would tend to destroy the only purpose which he could have had for such fabrication. The

32

same motive that prompted him to forge a will would also induce him to present it for probate and avail himself of its expected benefits.    That he forged a will for the mere purpose of laying it away and having it found among his papers after death, is quite improbable.    The motives influencing the conduct of Onderdonk are not clearly disclosed by the evidence; but it does appear that Onderdonk's relations with the contestant were friendly; that she occasionally consulted him about business affairs; constituted him guardian of her infant children; had his assistance in her contest over letters of administration, and gained possession of Hesdra's estate through that assistance; that she furnished Onderdonk with water from the Hesdra property to supply his customers in Nyack.    The suppression of the will benefited Mrs. Tordoff, and her alone, so far as the evidence discloses.    It was a possible inference from the testimony, that John V. Onderdonk was actuated by a desire to benfit Mrs. Tordoff, or secure her gratitude, and while this does not relieve his character from the imputations resting upon it, it furnishes a possible and probable motive why he should not wish to disturb her in the enjoyment of Hesdra's property, and a reason why the court should admit the will to probate notwithstanding his reprehensible conduct.

By the consent of the parties upon the argument, the court were furnished with the original will and the exhibits of handwriting used upon the trial of the case.    The will had the appearance of a genuine instrument and presented no reason to us, upon its face, to inspire a doubt of its authenticity and genuineness.    The various declarations by Onderdonk made after Hesdra's death, put in evidence by the contestants, to the effect that he had a will for Hesdra, which was unsigned, but that he could fix that, and similar expressions, were so unnatural and improbable that a trial court might well refuse to credit them and more particularly in the case of witnesses who were animated by feelings of hostility towards the proponent and his father.    Re-

moving these declarations from the case there is little left of the contest except Onderdonk's frequent declarations that Hesdra left no will when he died.

Upon the whole case we are satisfied that there was sufficient corroborative evidence in the circumstances of the case, in connection with the proof of the handwriting of the testator and the subscribing witnesses, and the full and explicit attestation clause, to justify the finding of the surrogate admitting the will to probate.

It is claimed by the contestant that the surrogate erred in permitting the proponents to show confirmatory declarations by John V. Onderdonk, made prior to the death of Hesdra, to support the authenticity of the will. It is, undoubtedly, the general rule that when a witness has been proved to have made contradictory statements his evidence cannot be supported by proving that at other times he had made statements in harmony with his evidence. There are, however, well settled exceptions to the rule, and we think this case comes within them. Robb *v.* Hackley, 23 Wend. 50. The head note to that case reads that " where the witness is charged with giving his testimony under the influence of some motive prompting him to make a false or colored statement, it may be shown that he made similar declarations at a time when the imputed motive did not exist. So in contradiction of evidence tending to show that the account of the transaction, given by the witness, is a fabrication of late date, it may be shown that the same account was given by him before its ultimate operation and effect arising from a change of circumstances could have been foreseen."

This case has been frequently cited in the text writers and followed with approval by the courts of this state. Greenleaf's Evidence, § 469; Wharton's Evidence, § 570; Dudley *v* . Bolles, 24 Wend. 471 ; Gilbert *v.* Sage, 57 N. Y. 639; Hotchkiss *v.* Germania Fire Ins. Co. , 5 Hun, 90.

In Gilbert *v.* Sage it is said that " as the aim of the cross-

examination was to establish that so much of the conversation as was not detailed to defendant's counsel was an afterthought and subsequent invention of the witness, it was proper to show, in answer, that the witness had previously told the same story."

In Hotchkiss v. Germania Fire Ins. Co. it was said by MULLEN, Justice, " that statements made by a witness corroborating his evidence on the trial, made soon after the transaction to which it relates, or when he was not under the influence of any motive to relate the transaction untruthfully, are competent, where it is shown that he had given a differant relation of the occurrence, or that he had testified under the influence of a motive calculated to induce him to testify falsely."

In Herrick v. Smith, 13 Hun, 446, the same doctrine was laid down and evidence to show corroborative statements made by the witness at a time when the alleged motive to testify falsely did not exist, were allowed. The case of Robb v. Hackley was also approved by Judge MILLER in the case of Railway Passenger Assurance Co. v. Warner, 62 N. Y. 651, and see also Wray v. Fedderke, 43 Supr. Ct. 335.

The contestant's evidence tended to show that Onderdonk declared, after Hesdra's death, that he intended to fabricate a will for Hesdra. We think it was competent within the authorities to rebut this evidence by proof of his declarations during Hesdra's life-time that Hesdra had made a will.

We find no other exceptions worthy of serious consideration, and the judgment is therefore affirmed, with costs of this appeal to the several respondents against the appellants.

All concur, GRAY, J. in result.